**HYDROCARBON RESEARCH, INC.,**
**Appellant,**

**v.**

**Robert S. CALVERT et al., Appellees.**

No. 11603.

Court of Civil Appeals of Texas.

Austin.

May 15, 1968.

Rehearing Denied June 12, 1968.

**540**

Locke, Purnell, Boren, Laney & Neely, Joseph J. French, Jr., Richard G. Rogers, Dallas, for appellant.

Crawford C. Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., A. J. Carubbi, Jr., Executive Asst. Atty. Gen., John Grace, Marietta McGregor Payne, Kerns B. Taylor, Arthur Skibell, Terry Reed Goodman, Asst. Attys. Gen., Austin, for appellees.

HUGHES, Justice.

This suit is on a claim for refund for taxes paid under the Limited Sales, Excise and Use Tax Act, Vol. 20A, Taxation General, Title 122A, V.A.T.S. filed by Hydrocarbon Research, Inc., appellant, against Robert S. Calvert, Comptroller of Public Accounts, Crawford Martin, Attorney General and Jesse James, Treasurer, in their respective capacities as officials of the State of Texas.[1]

In a nonjury trial, judgment was rendered that appellant take nothing by its suit.

Appellant seeks a refund under the Limited Sales, Excise and Use Tax Act, of taxes, penalties and interest for each quarter from the fourth quarter of 1961 through the third quarter of 1963. Except for the third quarter of 1963, the taxes, penalties and interest involved in this proceeding arose under Acts 1961, 57th Leg., 1st C.S., ch. 24, sec. 1, p. 71. Article 20.06 (D) (1) of the 1961 act limited the time within which the Comptroller could mail or personally serve a notice of deficiency determination to a period of three years from the last day of the month following the quarterly period for which the amount is proposed to be determined. As originally enacted, Article 20.06(D) (1) read as follows:

"(1) Every notice of a deficiency determination shall be personally served or mailed within three (3) years after

1. See Art. 20.10 of such Act.

the last day of the calendar month following the quarterly period for which the amount is proposed to be determined or within three (3) years after the return is filed, whichever period expires the later. In the case of failure to make a return, every notice of determination shall be mailed or personally served within three (3) years after the last day of the calendar month following the quarterly period for which the amount is proposed to be determined."

The Comptroller mailed to appellant the first and only notice of deficiency determination on December 10, 1965. This notice of a deficiency determination was mailed after more than three years had elapsed from the last day of the calendar month following those quarterly periods of the fourth quarter of 1961 and of the first, second and third quarters of 1962. Appellant failed to make returns for the taxes involved. Appellant did not consent in writing to the mailing of notice of deficiency determination more than three years after the last day of the calendar month following the quarterly period for the taxes involved in this proceeding.

Effective from and after July 1, 1963, the Legislature by Acts 1963, 58th Leg., ch. 138, sec. 1, p. 371 amended the Limited Sales, Excise and Use Tax Act by re-enacting it in toto, including among other amendments, the substitution of "four (4)" for "three (3)" in each place where "three (3)" had previously appeared in Article 20.06(D) (1), quoted above. The Comptroller mailed his first and only notice of deficiency determination within four years, but more than three years, after the last day of the calendar month following the fourth quarter of 1961, and the first, second and third quarters of 1962.

Appellant has exhausted its administrative remedies in its attempt to obtain a refund of the taxes, penalties and interest for which this suit was brought.

Appellant's first two points, jointly briefed, are (1) that the trial court erred

in applying the four year period of the 1963 Amendatory Act rather than the three year period fixed by the 1961 Act for giving notice of determination of tax liability when no return is filed as to taxes arising under the 1961 Act and (2) that as to such taxes the trial court erred in failing to apply Sections four through seven of the 1963 Act, which read:

"Sec. 4. The repeal of any law by this Act shall not affect or impair any act done or obligation, right, license, permit or penalty accrued or existing under the authority of the law repealed; and such law shall be treated as still remaining in force for the purpose of sustaining any proper action concerning any such obligation, right, license, permit or penalty. Taxes incurred under any law repealed by this Act are an obligation within the meaning of this Section. In addition, any permit or license obtained under any law repealed by this Act shall remain effective for the term and under the conditions prescribed by the repealed law under which the permit or license was granted or issued.

In addition to the application of this Act wtih respect to transactions occurring on and after the effective date hereof, the definitions, exemptions and other provisions hereof are intended to clarify the prior law (Chapter 24, Acts 1961, Fifty-seventh Legislature, First Called Session) and shall not be considered in construing or applying the prior law in such a manner as to cause or result in the imposition or any tax thereunder which would not have been imposed under the prior law in the absence of this Act.

Sec. 5. If any provision of this Act or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect any other provision or application of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are declared to be severable.

Sec. 6. This Act shall be effective from and after July 1, 1963.

Sec. 7. All laws or parts of laws in conflict herewith are repealed to the extent of the conflict."

The trial court made, among others, the following pertinent conclusions of law:

"(1) Article 20.06(D) (1), as embodied in the 1961 Act, and Article 20.06 (D) (1), as amended by the 1963 Act, are procedural and remedial and constitute statutes of limitation.

(2) The amendment of Article 20.06 (D) (1), Acts 1963, 58th Leg., Ch. 138, p. 371, sec. 1, had the effect of authorizing the Comptroller to issue Deficiency Determinations within four years rather than within three years as authorized by Article 20.06(D) (1), Acts 1961, 57th Leg., 1st C.S., Ch. 24, Article 1, p. 71, sec. 1.

\*   \*   \*   \*   \*   \*

(6) The 1963. amendment to Article 20.06(D) (1), operated prospectively and had the effect of extending the limitations period for the issuance of Deficiency Determinations from three years to four years.

\*   \*   \*   \*   \*   \*

(9) No rights were vested in Hydrocarbon Research, Inc., by virtue of Article 20.06(D) (1) of the 1961 Act.

(10) The Legislature did not intend to have a three-year period of limitations for issuance of Deficiency Determinations on taxes due prior to July 1, 1963, and a four-year period for issuance of Deficiency Determinations on taxes due thereafter.

\*   \*   \*   \*   \*   \*

(15) Section 4 of the 1963 enactment expressly preserved the taxes, penalties and interest which had accrued prior to the effective date of the Act, same being July 1, 1963. The 1963 Act did not create a new liability but preserved in Section 4 prior liabilities which had accrued for an additional one-year period."

Relying upon the provisions of Sec. 4 of the 1963 Act, appellant states its position as follows:

"If the Comptroller did not have an existing right to mail a notice of deficiency determination prior to the 1963 Act, it can hardly be said that the change of the word 'three' to 'four' created that right. On the contrary, the Comptroller's right to mail notice of deficiency determination existed under the 1961 Act and continued to exist until the expiration of three years from the last day of the calendar month following the quarterly period for which the deficiency amount was proposed to be determined. In other words, the Comptroller had a right to issue his notice of deficiency determination on or before January 31, 1964 with regard to the fourth quarter of 1961, on or before April 30, 1965 with regard to the first quarter of 1962, on or before July 31, 1965 with regard to the second quarter of 1962, and on or before October 31, 1965 with regard to the third quarter of 1962. This the Comptroller did not do. His first and only notice of deficiency determination was mailed to appellant on December 10, 1965 which was more than three years from the last day of the calendar month following the first four quarters involved in this proceeding. The Comptroller had no such right unless the 1963 Act is considered as 'affecting' such 'existing' right."

We believe that appellant misreads Art. 20.06(D) (1), supra. This article conferred no right on the State or the Comptroller. Imperative language was used with reference to the Comptroller, " \* \* every notice of determination *shall* be \* \* \* " given by him.

This imposed a statutory duty upon the Comptroller with respect to the procedure to be employed in determining tax liability in the absence of a filed return.

This was a duty which the State, the only beneficiary involved, could alter, modify or repeal at any time it saw fit so long as vested rights of third parties were not affected. No vested interests are involved in this suit.

Section four provides that the Act shall not affect any "obligation" or "right" accrued or existing under the 1961 Act. The only "obligation" involved in this suit, under these points, is the obligation of appellant to pay the taxes which it justly owes to the State. The only "right" involved in this case is the "right" of the State to insist on the payment of those taxes in accordance with its laws.

Appellant also points to Sections four and six of the 1963 Act which provide that the effective date of the Act shall be July 1, 1963, and to the language that in the application of this Act with respect to transactions occurring on and after its effective date its provisions are intended to clarify the prior law and was not to be construed as imposing any tax under the prior law which would not have been imposed by such law in the absence of the 1963 Act. Appellant contends that these provisions clearly spell out the Legislature's intent that the 1963 Act would not be applied retroactively or retrospectively.

■ These provisions of Sections four and six of the 1963 Act must be construed along with the other provisions of Section four, noted above, and with the Act as a whole.

■ We are unable to draw the same inferences which appellant sees in the provisions of the Sections here cited. There is no disputing that the 1963 Act went into effect July 1, 1963, and not before. It is equally plain, we believe, it was intended by the Legislature that the Act have some retrospective effect so long as the result was not the initial imposition of a tax under the former law which but for the 1963 Act could not have been imposed. The taxes involved in these points were validly imposed under the 1961 Act and were existing and accrued when the 1961 Act was repealed, and the obligation to pay such taxes was saved and not extinguished by the repeal. See 56 Am.Jur., Statutes, Sec. 527, p. 534.

We overrule points one and two.

Points three and four are that the trial court erred in holding the requirement of Art. 20.06(D) (1) of the 1961 Act that notice of tax determination when no return is filed shall be given within 3 years after the time specified was a statute of limitation, procedural and remedial, rather than a statute of creation forming a substantive limitation on the authority of the Comptroller and in not holding such substantive limitation precluded the Comptroller from collecting taxes under the 1961 Act when notice of a tax determination was not given within such three year period.

The gist of appellant's contention under these points is stated by it as follows:

"In 1961, the Legislature of Texas enacted the Limited Sales, Excise and Use Tax Act. This statute imposed a tax liability under certain conditions upon the sale or use of tangible personal property within the State * * * a liability which was new and theretofore unknown in the State of Texas or to the common law. The Act provided a means for establishing the rights created thereunder. The Comptroller is charged with its administration, and if he is not satisfied with the return or the amount of tax required to be paid by any person, he determines the tax upon the basis of facts contained in the return or upon the basis of any information within his possession or which may come within his possession. See, Art. 20.06(A) (1). After the Comptroller has made his determination of the tax, he must then give to the retailer, or person storing, using or consuming tangible personal property written notice of his determination (hereinafter sometimes called Deficiency Determination), if he is to es-

tablish his right to the tax. Art. 20.06 (C) (1). The Act specified the time period within which the Comptroller can issue his notice of Deficiency Determination. This limitation upon the right of the Comptroller to determine a Deficiency Determination is three (3) years, as set forth in Article 20.06(D) (1) of the 1961 Act."

Appellant cites numerous authorities to sustain these points including State of California v. Copus, 158 Tex. 196, 309 S.W.2d 227, where the Court stated:

"The weight of authority favors the rule or exception to the foregoing general rule that where the statute creates a right and also incorporates a limitation upon the time within which the suit is to be brought, the limitation qualifies the right so that it becomes a part of the substantive law rather than procedural, and that unless suit is brought within the time allowed by statute no right of action can be maintained even though the law of the forum provides for a longer period of limitation. Stumberg Conflict of Laws, 2d Ed. p. 150.

\* \* \* \* \* \*

Although there exists quite a cleavage among the authorities as to the validity of this exception, we prefer to follow those decisions that would treat the limitation in the California statute as substantive and not procedural."

This was a conflict of law case and was one in which the decision of the Court could have rested upon another ground as reflected by the opinion.[2]

It is to be noted that the Court in Copus did not cite Edwards Mfg. Co. v. Southern Surety Co., 283 S.W. 624, Tex.Civ.App.,

Eastland, n. w. h. (1926) where the Court stated:

"The first contention, that a statute creating a right and prescribing a time within which the right may be asserted is not a statute of limitation, does not obtain in this state. De Harn v. Railway Co., 23 S.W. 381, 86 Tex. 68, Chapman v. Mooney (Tex.Civ.App.) 257 S.W. 1109; Chapman v. Tyler County (Tex. Civ.App.) 259 S.W. 303; State [Banking] Board v. Pilcher (Tex.Com.App.) 270 S.W. 1005. It is not the rule in many other jurisdictions. Sharrow v. Inland Lines, 108 N.E. 217, 214 N.Y. 101, L.R.A. 1915E, 1192, note Ann.Cas. 1916D, p. 1236.

In the cases cited above, the statute creating a cause of action for injuries resulting in death, and limiting the time within which to sue, was held to be a statute of limitation, although the cause of action was created by the Legislature and did not exist at common law. In the other cases referred to the Supreme Court held that the statute prescribing the time within which to present claims against the guaranty fund was a statute of limitation, and must be pleaded, although, of course, such a right was unheard of at common law."

See Southern Surety Co. of New York v. First State Bank, 54 S.W.2d 888, Tex. Civ.App. Waco, writ ref. (1932).

In the strict sense, it seems to us, the 1961 Act did not create a right. It merely exercised a right which the State as an attribute of sovereignty had, i. e. the right to impose a tax. See 54 Tex.Jur.2d, Taxation, Sec. 5, p. 111. Certainly the right of a sovereign to tax was not unknown to the common law.

---

2. In a comment in Texas Law Review Vol. 35, p. 95, l. c. 103, by Muckleroy Mc-Donnold, Jr., on Limitation of Actions and Conflict of Law—the distinction is noticed between the construction to be given a limitation statute for local purposes and in the conflict of law area, saying: "Moreover, characterizations of statutes as procedural for municipal purposes certainly should not control characterization of the same statutes for conflict-of-laws purposes." Lorenzen and Stumberg are cited by the author in support of this statement.

As expressing a contrary view, appellant cites State v. Bies, 258 Minn. 139, 103 N.W.2d 228. But there the Legislature attempted to revive a tax liability which had already become barred by statute. Clearly, this could not be done and no such attempt is made here.

The case of Mudd v. McColgan, 30 Cal. 2d 463, 183 P.2d 10 (1947), cited by the State, is closely parallel to this case on the facts and comparative statutes. This suit was for the recovery of deficiency income taxes assessed and paid. When the tax liability accrued the statute provided that notice of a deficiency assessment should be made within three years from the filing of the return. This statute was amended to increase this period from three to four years. This change became effective prior to the expiration of the three year period involved. The notice of deficiency was given within the four year period. There, as here, the taxpayer contended that compliance with the three year period was a condition precedent to the exercise of a right and not a statute of limitation. In overruling this contention the Court stated:

"In order that the time element in the mailing of the notice of deficiency constitute a condition precedent, the statute must create a new and distinct liability as to such deficiency. However, the plaintiff's liability to pay the deficiency tax is not a liability created by section 19. For if it were so created, the ascertainment of the extent thereof would be governed by the provisions of the 1939 act. The adoption of the plaintiff's contention would therefore not avoid the application of the four year period. But it may not be questioned that the plaintiff's total tax liability for 1936, including any deficiency, is governed by the statutory measure applicable to that year. His liability for a deficiency is part and parcel of his liability for the total tax. In fact the word 'deficiency' negatives any concept of a new or distinct liability. On the contrary, implicit therein is its relationship to the total tax. The basis of the plaintiff's total tax was a correct computation of net income. The tax became due upon the filing of the return. Any portion thereof not discharged was chargeable to and collectible from the plaintiff as a deficiency. These considerations render inconceivable any theory that the liability to pay a deficiency tax is other than a continuing liability, based on net income correctly reported, and which is not discharged upon payment of a tax determined from incorrectly reported net income. The plaintiff's duty to discharge the unpaid amount of the total tax continued as a liability to pay the deficiency tax. Section 19 of the act provided the procedural means for ascertaining and giving notice of the assessment of the deficiency. It is essentially a provision looking to enforcement. Provisions for summary methods of ascertaining and collecting taxes are recognized enforcement measures. People v. Skinner, 18 Cal.2d 349, 115 P.2d 488, 149 A.L.R. 299; People v. Mahoney, 13 Cal.2d 729, 91 P.2d 1029.

[3, 4] The quoted provision of section 19 is therefore a statute of limitation which bars the remedy for enforcement in the event that notice be not mailed within the prescribed time.

\*     \*     \*     \*     \*     \*

It is the settled law of this state that an amendment which enlarges a period of limitation applies to pending matters where not otherwise expressly excepted. Such legislation affects the remedy and is applicable to matters not already barred, without retroactive effect. Because the operation is prospective rather than retrospective, there is no impairment of vested rights. Moreover a party has no vested right in the running of a statute of limitation prior to its expiration. He is deemed to suffer no injury if, at the time of an amendment extending the

period of limitation for recovery, he is under obligation to pay." [3]

In Scarborough v. Atlantic Coast Line R. Co., 178 F.2d 253, 15 A.L.R.2d 491, U.S. Ct. of App., Fourth Circuit, the Court held that the rule approved in Copus does not apply when there is fraud, the Court quoted from another opinion from the 4th Circuit as follows:

"And we think it makes no difference that the limitation applicable to the action for death by wrongful act is held under state law to be a condition on the exercise of the right rather than a limitation on the remedy. This holding is based upon the narrow ground that the limitation is imposed by the statute creating the cause of action and is, to say the best of it, technical and legalistic reasoning, which is not followed in all the states."

In referring to other opinions cited and discussed, the Court said:

"Judge Frank in the Osbourne case [Osbourne v. United States, 2 Cir., 164 F.2d 767] and Judge Parker in the Burkhardt case [State of Maryland to Use of Burkhardt v. United States, 4 Cir., 165 F.2d 869, 1 A.L.R.2d 213], supra, have shown that the distinction between a remedial statute of limitations and a substantive statute of limitations is by no means so rock-ribbed or so hard and fast as many writers and judges would have us believe. Each type of statute, after all, still falls into the category of a statute of limitations. And this is none the less true even though we call a remedial statute a pure statute of limitations and then designate the substantive type as a condition of the very right of recovery. There is no inherent magic in these words."

In 53 C.J.S. Limitations of Actions § 1, p. 905, it is stated that "Whether a particular limitation of time is to be regarded as a part of the general statute of limitations or as a qualification of a particular right must be determined from the language employed and from the connection in which it is used."

The 1961 Act recites in its emergency clause that the State of Texas was "facing the greatest financial crisis in its history" and its caption stated that it was an Act to raise revenue by imposing a limited sales, excise and use tax on the sale or use of tangible personal property and "providing for the administration and enforcement of such tax."

■ We believe that Art. 20.06(D) (1) providing for notice to be given of a tax determination by the Comptroller within the time stated is nothing more than a provision for the administration of such act and is wholly procedural in nature and not a matter of substantive law.

We are aided in reaching this conclusion, in addition to the authorities above discussed, by the opinion of the Supreme Court in Smith v. Davis, 426 S.W.2d 827 (decided April 3, 1968) holding that a statute materially changing the method of assessing taxes in hospital districts at a greater percent of value than that used for State and county purposes "merely amends the procedure for assessing property," the Court further saying that "A taxpayer has no vested right to have his property assessed by any particular method or system. * * *"

When we consider the purpose for which the Act of 1961 was enacted, the language of its caption and of the particular section before us and the fact that we are not presented with a conflict of laws problem but only with the interpretation of laws of Texas, we are confident that our conclusion is correct and that justice has been achieved, not thwarted.

If we are correct in holding that this section of the 1961 Act is procedural, then there is no dispute but that it could be amended as was done without affecting

---

3. Sec. 19 of the 1935 Act contained the three year limitation period. The 1939 Act changed "three" to "four."

obligations or defenses which had not become vested. Cathey v. Weaver, 111 Tex. 515, 242 S.W. 447 (1922).

Points three and four are overruled.

Appellant's fifth and last point is that the trial court erred in not holding the 120-days notice provision in Art. 20.04(H) in both the 1961 and 1963 Acts unconstitutional for the reason that it violates the equal protection clauses of the Federal and State Constitution. We quote Art. 20.04(H) of the 1961 Act:

"(H) Written Contracts and Bids Executed Prior to the Effective Date of this Chapter. There are exempted from the taxes imposed by this Chapter the receipts from the sale, use or rental of, and the storage use or other consumption in this State of, tangible personal property (i) used for the performance of a written contract entered into prior to the effective date of this Chapter or (ii) pursuant to the obligation of a bid or bids submitted prior to the effective date of this Chapter which bid or bids could not be altered or withdrawn on or after that date and which bid or bids and contract entered into pursuant thereto are at a fixed price not subject to change or modification by reason of a tax imposed by this Chapter.

Provided, however, that notice of such contract or bid by reason of which an exclusion is claimed under this paragraph (H) must be given by the taxpayer to the Comptroller on or before the lapse of one hundred and twenty (120) days from the date of passage of this Chapter."

We also quote appellant's contentions under this point as stated in its brief:

"Appellant respectfully submits that the notice provision contained in the second paragraph of Article 20.04(H) is an unreasonable and arbitrary qualification of the exemption contained in the first paragraph of Article 20.04(H). The notice provision arbitrarily restricts the valid contracts executed by foreign corporations and people outside of the State of Texas because the notice provision makes it impossible for such a foreign corporation to qualify its contract after the expiration of the 120 day period unless it is a 'taxpayer' within the meaning of the 1961 Sales Tax Act before the expiration of the 120 day period. Appellant respectfully submits that there was no sufficient reason for the Legislature to so discriminate. By such discrimination, the Legislature effectively denied the appellant equal protection of the laws under the Texas and United States Constitutions.

\* \* \* \* \* \*

Appellant does not question the Legislature's reasonableness in providing the exemption contained in the first paragraph of 20.04(H) because it is obvious that the Legislature intended not to impair contracts previously entered into and not to be performed in Texas subsequent to the effective date of the Act, September 1, 1961. However, appellant respectfully submits that the Legislature had no reasonable basis for so limiting the exemption. Under the terms of the exemption, a person was not entitled to give notice until he became a 'taxpayer' within the meaning of the Act. Appellant herein did make a de minimus purchase within the 120 day period for use within the State of Texas, but there is no indication when the materials were brought into the State for use in connection with the project contemplated by the contract involved in this action. The appellant could not reasonably have been expected to give notice to the Comptroller until it came into the State to perform the contract under which the taxes would accrue unless otherwise exempt."
We overrule this point.

Art. 20.01(Q) of the 1961 Act defines a taxpayer as meaning "any person liable for taxes under this Chapter." The definition of "person" in 20.01(A) is all inclusive. The fact that appellant is liable for the taxes involved herein brings it within the statutory definition of "taxpayer."

We believe that the statutory definition of "taxpayer" includes all persons falling within the scope of the Act who are potentially liable for a tax thereunder and would become actually liable if they fail to comply with requirements of the Act necessary to free them from such liability.

Appellees have a crosspoint to the effect that the trial court erred in failing to sustain their plea in abatement and plea to the jurisdiction of the court. The basis of these contentions is that appellant did not comply with the notice provision of Art. 20.04(H), supra. We overrule this crosspoint. Art. 20.10 of the 1963 Act prescribes the terms upon which a taxpayer may sue for the recovery of any amount alleged to have been erroneously or illegally determined or collected. Appellees concede that appellant has complied with these terms. Since appellant is suing to recover taxes alleged to have been illegally collected from it the court below was vested with jurisdiction, the amount involved being $98,626.22. The court below did not err in overruling these pleas.

The judgment of the trial court is affirmed.