Robert S. **CALVERT, Comptroller of Public Accounts of Texas, Appellant,**

v.

**ENGINEERS & FABRICATORS, INC., Appellee.**

No. 11666.

Court of Civil Appeals of Texas.

Austin.

April 23, 1969.

Rehearing Denied May 7, 1969.

Phillips, Executive Asst. Atty. Gen., W. V. Geppert, Staff Legal Asst. Atty. Gen., John R. Grace, Alfred Walker, Asst. Attys. Gen., Austin, for appellant.

Eastham & Meyer, Sam Dawkins, Jr., Houston, for appellee.

PHILLIPS, Chief Justice.

After a hearing held by the Comptroller, Appellee was ordered to pay certain sales taxes, penalty and interest amounting to a total of $8,717.17, because of sales tax deficiency for the period commencing April 1, 1962 and ending March 31, 1966.

Appellee paid $4,744.66 of the total claimed by the Comptroller. This amount was paid under protest and Appellee filed this suit for the recovery thereof. The amount paid under protest represented the amount of taxes, penalty and interest adjudged by the Comptroller to be due for the period beginning April 1, 1964 and ending March 31, 1966. The State then filed its cross-action for recovery of the balance of the amount due under the Comptroller's determination.

The case was tried before the court without a jury, and judgment was entered allowing the Appellee a recovery of the money paid under protest and denying the State any relief under its cross-action.

We reverse and render judgment for Appellant.

Crawford C. Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., Hawthorne

Appellant is before us on six points of error,[1] briefed together, which complain of

---

[1] "First Point of Error: The trial court erred in holding that no tax was imposed under the Sales Tax Act on the cost of labor involved in the fabrication of an entirely new replacement tube bundle for a heat exchanger, under circumstances where the Appellee's customer removed the entire tube bundle from the shell or outer casing of his heat exchanger and sent it to Appellee's plant for repair or replacement and then the entire tube bundle was replaced by a wholly new and different tube bundle, fabricated by Appellee to the special order of the customer and which was sold to the customer and installed by the customer; Second Point of Error: The trial court erred in failing to hold that a tax was imposed under the Sales Tax Act on the entire sales price of an entirely new replacement tube bundle for a heat exchanger, and which bundle was fabricated to the special order of the customer; Third Point of Error: The trial court erred in holding, under the facts of this case, that fabrications and sales of entirely new tube bundle units for heat exchangers are in the nature of repairs within the meaning of Article 20.01 of the Sales Tax Act; Fourth

the ruling of the trial court that work done on certain equipment by Appellee was repairs within the contemplation of the Sales Tax Act rather than fabrications to the special order of the customers as contended by the State.

Appellee is in the business of manufacturing and repairing heat exchangers. Heat exchangers are used almost exclusively by either the oil industry or the chemical industry. A heat exchanger will take a hot product and cool it to a cold product or vice versa. Appellee also fabricates and sells replacement parts and units for these heat exchangers on special order from its customers. This case only involves transactions where the Appellee fabricated and sold entirely new tube bundle units for installation in these heat exchangers. Appellee paid sales tax on the cost of the materials only contending that no sales taxes were imposed on the cost of labor expended in the fabrication of the units because the transactions were in the nature of repairs within the meaning of Article 20.01(L) (3) (c) and Article 20.01(T) of Title 122A, Taxation-General, Vernon's Civil Statutes. The former provision referring to sales price states that sales price does not include the amount charged for labor or services rendered in installing, applying, remodeling or repairing the tangible personal property sold. The latter provision [2] pertains to work done by a contractor or a repairman and states under what conditions a limited sales tax only is due.

Appellant contends that Article 20.02, Taxation-General, Vernon's Civil Statutes, imposes a tax on the full sales price of all tangible personal property. Therefore the tax applies here unless the Appellee can show an exemption. That under subdivision (3) of subdivision (G) and under subdivisions (a) and (e) of subdivision (2) of subdivision (K) of Article 20.01 "Sale"

Point of Error: The trial court erred in rendering judgment for the Appellee based on his Findings of Fact Nos. 5, 7 and 10 for the reason that the issue of whether the transactions in controversy were in the nature of repairs within the meaning of Article 20.01 of the Sales Tax Act was an issue of law, not of fact; and as a matter of law, such transactions were not in the nature of repairs as contemplated by Article 20.01; Fifth Point of Error: The trial court erred in rendering judgment for the Appellee based on his Findings of Fact Nos. 5, 7 and 10 insofar as such findings may be construed to mean that the transactions in controversy were repair transactions within the meaning of Article 20.01, because there is no evidence to support such findings to that extent; Sixth Point of Error: The trial court erred in rendering judgment for the Appellee based on its findings of Fact Nos. 5, 7 and 10 insofar as such findings may be construed to mean that the transactions in controversy were repair transactions within the meaning of Article 20.01, because such findings to that extent are so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust."

2. Article 20.01 (T): "(T) Contractor or Repairman. 'Contractor' or 'Repairman' shall mean any person who performs any repair services upon tangible personal property or who performs any improvement upon real estate, and who, as a necessary and incidental part of performing such services, incorporates tangible personal property belonging to him into the property being so repaired or improved. Contractor or repairman shall be considered to be the consumer of such tangible personal property furnished by him and incorporated into the property of his customer, for all of the purposes of this Chapter.

(1) The above provision shall apply only if the contract between the person performing the services and the person receiving them contains a lump sum price covering both the performance of the services and the furnishing of the necessary incidental material.

(2) If the contract between the person providing the services and the person receiving them contains separate amounts applicable to the performance of the services and the furnishing of the material then the above Section shall not apply, and the person furnishing the materials shall be liable for the limited sales tax upon the agreed price of the materials as thus set forth in the contract. Provided, however, that the agreed price of the materials shall not be less than the actual cost of such materials to the person so providing them. * * *"

and "Purchase" expressly includes the fabrication of a piece of property to the special order of a customer. That under subdivision (b) of subdivision (1) of subdivision (L) and subdivision (a) of subdivision (2) of subdivision (L) and subdivision (b) of subdivision (1) of subdivision (D) of Article 20.01, "sales price" expressly includes the cost of labor and services as well as materials.

Appellee makes an all welded type of heat exchanger, being a type where every part of the whole unit is welded together. If repairs are necessary on the all welded type exchanger, it is necessary to cut the entire exchanger from the section of the refinery or chemical plant where it is located, and the entire exchanger sent to Appellee's plant for repairs, necessitating the closing of the particular section of the refinery or plant.

Appellee also makes "Removable Bundle" type of exchangers, composed of two main and different sections, the shell which is the part one can see, and the tube bundle which is inside and which actually has to do with the performance of the unit. If a removable bundle type exchanger is in need of repair, the bundle can be rather easily removed from its shell and shipped to Appellee's plant for repair, without sending the shell and without the necessity of tearing down the section of the plant or refinery where the exchanger is located. Many times when the removable bundle is inspected at the plant, it is found to be beyond repair and an entirely new tube bundle is manufactured to replace it.

Thus, there are three so called "repair" transactions that are involved in Appellee's business, to-wit: The entire "all welded together" type of heat exchanger is cut from the customer's plant and sent to Appellee's plant for repairs. Here no tax is claimed by the Comptroller on the cost of labor performed in the repair of the exchanger.

The tube bundle from a "removable bundle" type of exchanger is removed by the customer and shipped to the Appellee's plant for repairs, and it is indeed repaired, sometimes by the installation of some new parts; and then the original repaired tube bundle is shipped back to the customer. Here again the Comptroller claims no sales tax on the cost of labor performed in effecting the repairs.

The tube bundle from a "removable bundle" type of exchanger is removed by the customer and shipped to Appellee's plant for repairs, whereupon it is determined that the bundle is beyond repair; the original bundle is junked; an entirely new and different tube bundle is fabricated and sold to the customer; the completely new bundle is shipped to the customer's plant, where it is installed by the customer. Here the Comptroller claims sales taxes on the cost of labor as well as materials used in the fabrication of the new tube bundle unit; and these are the only transactions on which taxes are claimed and are the only type of transactions involved in this case.

■ We hold that when Appellee must replace the old bundle (that was removed by their customer and sent to them for repair) with an entirely new bundle, that they must "fabricate to the special order of their customer" (then send back to their customer for installation) that in this instance the cost of labor and services are included under the abovementioned subdivisions of Article 20.01.

Appellee contends that when the customer sends in a bundle for repair that it does not know what is wrong; consequently, they are under no special order and are left to their own resources as to whether to replace it entirely or merely to replace certain defective parts. We do not agree with this contention and hold that in such a situation the customer has placed a special order for a bundle that will work, either a repaired one or a completely new one.

In addition, we overrule Appellee's counterpoint to the effect that Appellant's cross-action for additional sales tax, penalties and interest is barred by limitations.

The State's cross-action was filed September 6, 1967. Both the cross-action and Appellee's suit for refund for the amount paid under protest arose as the result of a deficiency determination by the Comptroller.

The deficiency determination was made on July 15, 1966, and notice thereof mailed to Appellee on or about that date. It covered the total period from the quarter ending June 30, 1962, through March 31, 1966. A petition for redetermination was filed by the Appellee and a hearing had thereon. Whereupon a decision upon the petition for redetermination was rendered by the hearing examiner, which decision was approved and adopted by the Comptroller on February 23, 1967. The decision became final on March 25, 1967, and the amount of the determination was due and payable within twenty days thereof.

Appellee paid under protest that portion of the deficiency determined to be owing for the quarter ending June 30, 1964, through March 31, 1966, and filed suit for refund. The State filed its cross-action for the balance of the amount of the Comptroller's deficiency determination, together with proper penalties and interest due in regard thereto, as determined by the Comptroller. This balance was for the quarter ending June 30, 1962, through March 31, 1964.

"Art. 20.09(B)—Action for Collection of Tax, Penalties, Interest; Limitation.

At any time within three (3) years after any tax or any amount of tax required to be collected becomes due and payable, and at any time within three (3) years after the delinquency of any tax or any amount required to be collected, or within three (3) years after the last recording of a lien, the Comptroller may bring an action in the courts of this State * * * to collect the amount delinquent together with penalties and interest."

"Art. 20.09(G)—Judgment for Taxes.

(1) Comptroller May Sue. If any amount required to be paid to the State under this Chapter is not paid when due, the Comptroller may, within three (3) years after the amount is due, file in a court of competent jurisdiction in Travis County, Texas, * * * an action for recovery of such tax, together with any penalties and interest."

Art. 20.05(a) * * * reads as follows:

"(A) Due Date of Taxes.

The taxes imposed by this Chapter are due and payable to the Comptroller quarterly on or before the last day of the month next succeeding each quarterly period."

Appellee failed to notice the following provisions of Article 20.06 and Article 20.08:

Art. 20.06(A)

"(1) If the Comptroller is not satisfied with the return or returns of the tax or the amount of tax required to be paid to the State by any person, he may compute and determine the amount required to be paid upon the basis of the facts contained in the return or returns or upon the basis of any information within his possession or which may come into his possession. Nothing in this or any other Section of this Act shall be construed to preclude the Comptroller from proceeding against the consumer for any tax which the consumer should have paid but failed to pay."

Art. 20.06(D)

"(1) Every notice of a deficiency determination shall be personally served or mailed within four (4) years after the last day of the calendar month following the quarterly period for which the amount is proposed to be determined or within four (4) years after the return is filed, whichever period expires the later.

In the case of failure to make a return, every notice of determination shall be mailed or personally served within four (4) years after the last day of the calendar month following the quarterly period for which the amount is proposed to be determined."

Art. 20.08

"(E) Due Date of Determinations; Penalties. All determinations made by the Comptroller under paragraphs (A) through (G) of Article 20.06 are due and payable twenty (20) days after the time they become final. If they are not paid when due and payable, a penalty of ten per cent (10%) of the amount of the determination, exclusive of interest and penalties, shall be added thereto."

Thus, in regard to deficiency determinations, the Comptroller must act within four years after the last day of the calendar month following the quarterly period for which the amount is proposed to be determined. The first quarterly period covered by the determination in this case was the quarter ending June 30, 1962. The last day of the calendar month following that particular quarter was July 31, 1962. The Comptroller made his deficiency determination in this instance on July 15, 1966, and mailed a notice thereof to the Appellee on or about that same day. Hence, the Comptroller made the deficiency determination and mailed notice thereof within the four-year limit specified by the statute. The redetermination proceedings, decisions thereon and notice in regard thereto were had in accordance with Article 20.08, and the deficiency became due and payable within twenty days after March 25, 1967.

■ In harmonizing the limitations' provisions regarding deficiency determinations with those contained in Article 20.09(B) and (G) in regard to the filing of suit, we find that with respect to deficiency determinations, the Comptroller has four years to make a determination and then he has three years after the amount of the deter-

mination becomes due and payable within which to file suit. This is the only reasonable construction afforded. If this were not true, the four-year period for making deficiency determinations is meaningless. It would be a rather empty procedure to make a determination within four years, when the filing of suit on the amount determined was already barred in three years by virtue of Article 20.09(B).

The State's cross-action meets, on all points, the limitation requirement of Article 20.09(G) which says:

"If any amount required to be paid to the State under this Chapter is not paid when due, the Comptroller may, within three (3) years after the amount is due, file in a court * * * an action for recovery of such tax, together with any penalties and interest."

■ Here, by virtue of the timely deficiency determination there was an amount required to be paid under "this Chapter" (Chapter 20, Title 122A, Taxation-General, V.A.T.S.); such amount was due twenty days after March 25, 1967, and the Comptroller had three years after due date to file suit. See this Court's opinion in Hydrocarbon Research, Inc. v. Calvert, 429 S.W.2d 539 (Tex.Civ.App.1968, error ref'd n. r. e.)

While there seem to be no Texas cases directly in point with the Comptroller's position with respect to the limitation question, the California courts have construed almost identical provisions in the Sales Tax Act of that State in accordance with the position taken here by this State. See People v. Hochwender, 20 Cal.2d 181, 124 P.2d 823 (1942); People v. Nymer, 71 Cal.App.2d 550, 163 P.2d 92 (1945).

We reverse the judgment of the trial court and render judgment that Appellee take nothing in its suit for refund herein; that the State have judgment against the Appellee as prayed for in its cross-action filed herein.

Reversed and rendered.