# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

**4444444444444444444444444444**
**ON MOTION FOR REHEARING**
**4444444444444444444444444444**

### NO. 03-02-00474-CV
### NO. 03-03-00045-CV
### NO. 03-03-00046-CV

**Pantera Energy Company, Appellant**

**v.**

**Railroad Commission of Texas; ConocoPhillips Company; and Pioneer Natural Resources, USA, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT**
**NOS. GN103473, GN200177 & GN200727, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING**

## O P I N I O N

To address concerns raised in the Railroad Commission's motion for rehearing, we withdraw our original opinion and judgments issued on October 30, 2003, and substitute this opinion in its place. Pantera Energy Company filed two suits for judicial review challenging orders of the Commission that dismissed its forty-eight applications to dissolve certain pooled gas units in the Panhandle West Field. It also filed an action for declaratory relief that the Commission had acted

arbitrarily and capriciously by requiring Pantera to provide notice of its applications to offset operators and mineral owners. Pantera asserts that the version of Rule 38(d)(3) in effect when its applications were filed did not require such notice, and that the Commission could not consider other provisions of Rule 38—particularly Rule 38(h), governing exceptions to density provisions—and must have approved its applications without a hearing. *See* 14 Tex. Reg. 1575 (1989), *adopted* 14 Tex. Reg. 5255 (1989) (former 16 Tex. Admin. Code § 3.38(d)(3), (h)) (Tex. R.R. Comm'n) (hereinafter cited as Former Rule 38(d)(3)); 16 Tex. Admin. Code § 3.38(h) (2003).[1] While the three causes were pending, the Commission amended Rule 38(d)(3) to expressly require notice to affected persons listed in Rule 38(h)(1)(A). *See* 16 Tex. Admin. Code § 3.38(d)(3) (2003) (hereinafter cited as New Rule 38(d)(3)). The district court held that the amendment to the rule was procedural in nature and thus the Commission, whether it properly required such notice under Former Rule 38(d)(3), could require notice to offset operators and owners in its ongoing consideration of these applications. The trial court thus dismissed all three actions as moot.

We have consolidated the three causes on appeal to consider the common issue: whether the amendment to Rule 38(d)(3) is procedural in nature and thus applicable to the pending applications. We grant the motion for rehearing and affirm the district court's dismissal of the suits for judicial review because the amended rule moots the controlling issue in those actions; additionally, we affirm the dismissal of the declaratory-judgment action because it is duplicative of the relief sought in the suits for judicial review.

---

[1] Because the other relevant portions of the former rule were not amended along with subsection (d)(3) and do not differ from the current rule, citations to these other portions will be to the current rule. *See, e.g.*, 16 Tex. Admin. Code § 3.38(h) (2003).

## BACKGROUND

In 1948, the Commission adopted special field rules specifying that each well in the Panhandle West Field will drain 640 acres, making 640 the acreage required for each well drilled.[2] If a tract does not contain 640 acres, an operator may pool several tracts into one unit in order to drill a well. *See* 16 Tex. Admin. Code § 3.40 (2003). Almost sixty years ago, more than 150 separate tracts were pooled to form these forty-eight units on which forty-eight wells have been drilled. The operator of a unit that contains an existing well may seek the right to drill an additional well by applying for an exception to the density restrictions and proving another well is necessary to prevent the waste of hydrocarbons or confiscation of the operator's property. *See id.* § 3.38(f) (2003). Under either theory, the operator must present engineering and geological data to prove its entitlement to an exception to the density rule. *See id.* § 3.38(i) (2003). More importantly to this dispute, the operator seeking an exception must also give notice to all affected persons, including the operators and unleased mineral owners of adjacent tracts, because additional wells might adversely affect their interests. *See id.* § 3.38(h) (2003). In 1997, Pantera applied for a density exception to drill an additional well on one of the units at issue here. Phillips Petroleum Company, an offset operator, received notice and filed a protest; Pantera withdrew its application.[3]

---

[2] The Commission's statewide rules require an operator to have forty acres to drill and produce an oil or gas well. *See id.* §§ 3.37(b), 3.38(b)(2)(B) (2003). However, the Commission may adopt special field rules to protect the rights of mineral-interest owners in a certain reservoir and to allow for the orderly and scientific development of the field. *See* Tex. Nat. Res. Code Ann. § 85.042(b) (West 2001). In the absence of a special rule for a field, the statewide density rule governs.

[3] Pantera then filed for a permit to drill at exactly the same well location, subject to not producing concurrently with the existing well. When the new well was completed, Pantera shut-in the existing well.

3

Subsequently, in December 2000 and September 2001, Pantera filed a total of forty-eight applications to dissolve formerly pooled units in the Panhandle West Field into their component parts. Pantera filed its applications pursuant to Former Rule 38(d)(3);[4] the Commission, however, determined that the applications were, in effect, attempts to obtain exceptions to the density provisions without complying with Commission rules.[5] The Commission declined to consider the applications until Pantera gave notice to offset operators and owners of unleased mineral interests.

---

[4] After a unit has been voluntarily pooled and accepted by the Commission, the joined tracts may not be divided into separate tracts composed of substandard acreage, "unless and until the commission approves such division after application, notice to all current lessees and unleased mineral interest owners of each tract within the joined or unitized tract, and an opportunity for hearing." Former Rule 38(d)(3).

[5] According to the memorandum of Colin K. Lineberry (Office of General Counsel for the Commission) dated April 3, 2001, Pantera is alleging that because the component tracts that would result from dissolving these forty-eight units are alleged to have taken their current size and shape prior to the attachment of the field rules requiring 640-acre units, each substandard-sized tract would become a "legal subdivision" on which one well could be drilled. According to Intervenor ConocoPhillips Company, if all forty-eight applications were granted, Pantera would be entitled to drill one well on each of the resulting 157 component tracts, whereas they are currently entitled to only forty-eight producing wells on the same acreage. Pantera does not dispute this assertion and indeed advanced its "legal subdivision" argument before the Commission.

Lineberry concluded that Pantera's applications were, in effect, seeking exceptions to the density provisions and that Rule 38(d)(3) did not apply to these facts. Lineberry agreed with the examiner that Pantera was seeking to obtain an exception to density restrictions without complying with the notice provisions of Rule 38(h):

> If Rule 38(d)(3) did apply to these facts as urged by Pantera, Pantera could effectively grant itself exceptions to the density rule for the Panhandle, West Field without giving notice to offset operators (or any third party) and without any discretion on the part of the Commission to grant or deny the exception. This interpretation would preclude the Commission from exercising its statutorily mandated duties of protecting correlative rights and preventing waste.

Lineberry recommended that the Commission deny Pantera's appeal, which it did.

4

*See id.* Pantera refused, relying on Former Rule 38(d)(3), which requires notice to only operators and lessees of tracts within the pooled unit to be dissolved, in this case only to Pantera itself. *See* Former Rule 38(d)(3). Specifically, Pantera insisted that the last sentence in Former Rule 38(d)(3) required the Commission to grant its applications without deliberation: "If written waivers are filed or if a protest is not filed within the time set forth in the notice of application, the application will be granted administratively." *See id.* The Commission declined to grant Pantera's applications administratively. Regarding two of the applications, the Commission informed Pantera that it could seek a hearing, but only after giving notice to offsetting operators and unleased mineral interest owners. Pantera continued to refuse to give notice and asked the Commission to reconsider. The Commission declined to change its ruling and dismissed the applications.

On October 19, 2001, while the applications were still pending before the Commission, Pantera filed the first lawsuit in district court seeking a declaratory judgment that the Commission was improperly applying Former Rule 38(d)(3) by requiring notice to the affected persons listed in Rule 38(h)(1)(A). The Commission, in response, challenged the court's jurisdiction to grant declaratory relief when the Commission's actions were subject to challenge in a suit for judicial review. In October 2001, the Commission dismissed Pantera's first two applications; in December, the Commission dismissed Pantera's remaining applications. Pantera filed two new suits seeking judicial review of both Commission orders.[6]

---

[6] Eventually three other operators in the Panhandle West Field intervened in all three suits, urging their own pleas to the jurisdiction: Conoco Inc., Phillips Petroleum Company, and Pioneer Natural Resources USA, Inc.

On January 24, 2002, the Commission amended Rule 38(d)(3) to expressly require notice to the "affected persons described in subsection (h)(1)(A)." *See* New Rule 38(d)(3); 16 Tex. Admin. Code § 3.38(h). In April 2002, the district court granted the Commission's and intervenors' pleas to the jurisdiction and dismissed the declaratory-judgment action. The Commission and intervenors then asserted a plea to the jurisdiction in the two suits for judicial review, urging that the parties' dispute had become moot because of the Commission's amendment to Rule 38(d)(3). The district court agreed that the amendment to the rule was a procedural change that applied to the application process when the rule became effective, mooting any dispute about what notice Pantera was required to give for these applications. It dismissed the two suits for judicial review. Pantera asks this Court to reverse all three district-court judgments and remand the causes to the district court for proceedings on the merits.

## DISCUSSION

Pantera urges that the district court erred by declaring its dispute with the Commission moot because (1) the Commission's amended rule should not be applied retroactively to its applications and (2) the district court had jurisdiction to determine whether the Commission violated its own rule by arbitrarily and capriciously requiring notice to offset operators and other affected persons. We review a district court's ruling on a plea to the jurisdiction under a *de novo* standard of review because subject matter jurisdiction is a question of law. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *Cornyn v. County of Hill*, 10 S.W.3d 424, 427 (Tex. App.—Waco 2000, no pet.).

6

*Mootness*

The mootness doctrine implicates subject-matter jurisdiction. *Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 229 (Tex. 1993). It dictates that courts avoid rendering advisory opinions by only deciding cases that present a "live" controversy at the time of the decision. *Camarena v. Texas Employment Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988); *see Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000). For a plaintiff to have standing, a controversy must exist between the parties at every stage of the legal proceedings, including the appeal. *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001) (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)). If a controversy ceases to exist, "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," and the case becomes moot. *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). If a case becomes moot, the parties lose standing to maintain their claims. *Id.* A case becomes moot when (1) it appears that one seeks to obtain a judgment on some controversy, when in reality none exists, or (2) when one seeks a judgment on some matter which, when rendered for any reason, cannot have any practical legal effect on a then-existing controversy. *Texas Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 846 (Tex. App.—Austin 2002, pet. denied) (citing *Scholl v. Firemen's & Policemen's Civil Serv. Comm'n*, 520 S.W.2d 470, 471 (Tex. Civ. App.—Corpus Christi 1975, no writ)). In this instance, the second rationale is implicated: a decision on the merits in the three cases—whether the Commission properly required Pantera to give notice to offset operators or acted arbitrarily and capriciously in so doing—would be an advisory opinion with no practical effect on a live controversy if New Rule 38(d)(3) is a procedural amendment that now applies to future steps

7

concerning this dispute. To decide this appeal, we must determine whether the amended rule is applicable to the pending applications.

### *Procedural v. substantive*

Pantera claims that Former Rule 38(d)(3), as it existed on the dates its applications were filed, governs the notice Pantera was required to give, and that therefore the district court erred in dismissing these causes as moot. To sustain this position, Pantera argues that the amendment to the rule is substantive in nature and thus cannot apply retroactively. In the alternative, Pantera urges that even if the amendment is procedural, it cannot be applied retroactively because to do so would deprive Pantera of vested rights. The Commission, on the other hand, contends that the notice required under New Rule 38(d)(3) is only a procedural requirement and thus should be applied from its effective date forward to govern any consideration of Pantera's pending applications. *See Texas Dep't of Health v. Long*, 659 S.W.2d 158, 160 (Tex. App.—Austin 1983, no writ).

The basis for Pantera's three suits in district court was that the Commission acted arbitrarily and capriciously by requiring notice to offsetting operators and unleased mineral owners, the "affected persons" named in Rule 38(h)(1)(A), when that requirement was not specified in Former Rule 38(d)(3). This would seem to mirror the situation in *Long*, where the legal issue presented in district court was whether the Department of Health failed to obtain a necessary certificate from the local commissioners court before granting an application for a municipal landfill. Before the case could be heard, the Department repealed its rule requiring the certification. This Court held, "We have no difficulty in concluding that agency requirements for inclusion, or not, of items in an application for a landfill are procedural in character." *Id.* We thus held that the new rule

8

would retroactively govern any pending landfill application, including the appellee's. This Court then determined that omitting the very requirement complained of had the effect of eliminating the whole foundation of the legal complaint and removed this Court's subject-matter jurisdiction. "A judgment by this Court on the merits of this appeal, under these circumstances, would be ineffectual for want of a subject matter upon which it could operate, the validity or application of the Department's superseded rule being immaterial." *Id.*

In the present appeal, the district court faced the same dilemma. It first applied the principle announced in *Long* to determine that the amended notice requirement in the new rule was procedural in nature. Notice requirements have long been considered to be procedural in nature. *See Parrish v. Brooks*, 856 S.W.2d 522, 526 (Tex. App.—Texarkana 1993, writ denied) (notice provision of tort claims act is procedural, not substantive); *Hydrocarbon Research, Inc. v. Calvert*, 429 S.W.2d 539, 546 (Tex. Civ. App.—Austin 1968, writ ref'd n.r.e.) (notice provision of tax statute is wholly procedural in nature). Although New Rule 38(d)(3) added a requirement while the amended rule in *Long* eliminated one, the same principle applies to future steps in pending litigation: that no litigant has a vested right in a procedural remedy. *Id.* (citing *Merchants Fast Motor Lines v. Railroad Comm'n*, 573 S.W.2d 502 (Tex. 1978)). The gravamen of Pantera's legal complaint—that the Commission improperly interpreted and applied its former rule—would be eliminated if that rule were superseded by the new rule. A legal opinion regarding the proper interpretation of the former rule "would constitute nothing more than an advisory opinion on an abstract question of law." *Id.* at 161.

9

Pantera insists that the amended rule did more than expand the notice provisions for an application; it also added a provision that the Commission would grant administrative approval of an application only if it "determines that granting the application will not result in the circumvention of the density restrictions of this section or other Commission rules . . . ." New Rule 38(d)(3). Pantera has asserted that under Former Rule 38(d)(3), the Commission had no discretion and had to grant an application when a protest was not filed. The last sentence of the former rule reads, "If written waivers are filed or if a protest is not filed within the time set forth in the notice of application, the application will be granted administratively."[7] By contrast, the amended rule clearly affords the Commission discretion to consider whether density restrictions or other rules are being circumvented before granting an application:

> A Commission designee may grant administrative approval if the Commission designee determines that granting the application will not result in the circumvention

---

[7] The former rule reads:

(3) **Division after joinder or unitization.**

If two or more separate tracts are joined or unitized for oil, gas, or geothermal development and accepted by the commission, the joined or unitized tracts may not . . . be divided into the separate tracts . . . unless and until the commission approves such division after application, notice to all current lessees and unleased mineral interest owners of each tract within the joined or unitized tract, and an opportunity for hearing. If written waivers are filed or if a protest is not filed within the time set forth in the notice of application, the application will be granted administratively.

14 Tex. Reg. 1575 (1989), *adopted* 14 Tex. Reg. 5255 (former 16 Tex. Admin. Code § 3.38(d)(3) (Tex. R.R. Comm'n) (hereinafter cited as Former Rule 38(d)(3)).

10

of the density restriction of this section or other Commission rules, and if either . . . written waivers are filed [or] no protest is filed[.]

New Rule 38(d)(3).[8]

Pantera argues that this makes the amendment substantive in nature, and as such it may apply only prospectively to applications filed after its effective date. A substantive act, and by analogy a substantive rule, will be applied only prospectively unless it appears by fair implication from the language used that it was the intent of the legislature (or agency) to make it applicable to

---

[8] The new rule reads:

(3) **Unit dissolution**.

(A) If two or more separate tracts are joined to form a unit for oil and gas development, the unit is accepted by the Commission, and the unit has produced hydrocarbons in the preceding twenty (20) years, the unit may not thereafter be dissolved into the separate tracts . . . unless the Commission approves . . . .

(B) The Commission shall grant approval only after application, notice, and an opportunity for hearing. [. . .] [I]f one or more wells on the unitized tract has produced from the field within the 12-month period prior to the application, the applicant shall include on the list all affected persons described in subsection (h)(1)(A) [including offset operators] of this section . . . .

(C) A Commission designee may grant administrative approval if the Commission designee determines that granting the application will not result in the circumvention of the density restrictions of this section or other Commission rules, and if either . . . written waivers are filed . . . [or] no protest is filed . . . .

16 Tex. Admin. Code § 3.38(d)(3) (2003) (hereinafter cited as New Rule 38(d)(3)).

both past and future transactions. *Ex parte Abell*, 613 S.W.2d 255, 258 (Tex. 1981); *Davis v. State,* 846 S.W. 2d 564, 569 (Tex. App.—Austin 1993, no writ). Although the merits of Pantera's suit are not before us, we find it helpful to our analysis to address Pantera's complaint that the Commission wrongfully withheld granting its applications when all of the then-required notice had been given, as this goes to Pantera's argument that the rule was substantively changed. Pantera implicitly asserts that the use in the former rule of the phrase "*will* be granted administratively" means that the Commission had (1) no choice but to grant its application in the absence of any protests, (2) no discretion to require notice to additional people if it deemed such notice necessary, and (3) no right to consider any other factors in granting an application, such as how density restrictions might be circumvented. Thus, it concludes, the new rule's reference to whether an application's grant will circumvent density restrictions is a substantive change because an application's grant, in the absence of a protest, is no longer automatic. However, it is quite possible that the use of the word "will" in the former rule is not mandatory but merely directive, especially considering the Commission's duty to "regulat[e] the production of oil and gas for the prevention of waste as well as for the protection of correlative rights." *See Texaco, Inc. v. Railroad Comm'n*, 583 S.W.2d 307, 310 (Tex. 1979).

By analogy, although the word "shall" is generally construed as mandatory by courts, *see Cities of Austin, Dallas, Ft. Worth and Hereford v. Southwestern Bell Tel. Co.*, 92 S.W.3d 434, 442 (Tex. 2002), courts have construed it as merely directive when legislative intent supports such a construction. *See Thomas v. Groebl*, 212 S.W.2d 625, 630-31 (Tex. 1948); *Texas Dep't of Pub. Safety v. Guerra*, 970 S.W.2d 645, 648-49 (Tex. App.—Austin 1998, pet. denied). In determining whether a statutory provision is directive or mandatory, a court should consider the entire act, its

12

nature and object, and the consequences that would follow from either construction. *Chisolm v. Bewley Mills*, 287 S.W.2d 943, 945 (Tex. 1956). "Provisions [that] are not of the essence of the thing to be done, but [that] are included for the purpose of promoting the proper, orderly, and prompt conduct of business, are not generally regarded as mandatory." *Id.* If the word "shall" can be directive rather than mandatory, certainly the future-tense verb "will" is susceptible to a similar interpretation. Because it is possible that the Commission did not *have* to grant Pantera's applications simply because no protests had been filed, we are not persuaded that the amended rule added a substantive requirement that impeded the former "automatic" grant of an application.

We are persuaded, rather, that the only issue presented in the three lawsuits turned on a procedural question: whether Pantera had to give notice to the operators and owners of mineral interests on adjacent offsetting tracts. The Commission required the notice and when Pantera refused to give it, the applications were dismissed. We are further persuaded that the Commission could make a procedural change in the notice requirements that would apply to future steps in pending applications.[9] *See Long*, 659 S.W.2d at 160. That moots the only issue presented in Pantera's

---

[9] We reject Pantera's suggestion that there are no future steps to be taken concerning these applications, only past steps to be reviewed. Pantera incorrectly suggests that the district court or this Court could actually grant the applications that the agency should have granted, or could remand the applications with "instructions" that the Commission grant them administratively. In a suit for judicial review, the administrative procedure act empowers the reviewing court to examine the agency record for error, but only empowers the court to reverse or remand the case to the agency. *Sierra Club v. Texas Nat. Resource Conservation Comm'n*, 26 S.W.3d 684, 688 (Tex. App.—Austin 2000) (citing Tex. Gov't Code Ann. § 2001.174(2) (West 2000)), *aff'd*, 70 S.W.3d 809 (Tex. 2002). The reviewing court may identify error but may not dictate how to correct the error because to do so would usurp the authority and discretion delegated to the agency by the legislature. *Texas Dep't of Transp. v. T. Brown Constructors, Inc.*, 947 S.W.2d 655, 659 (Tex. App.—Austin 1997, pet. denied).

13

lawsuits. The district court need not address the moot question of whether the Commission had the authority or discretion to require the notice under Former Rule 38(d)(3) because it now has explicit authority to do so under the amended rule.

### *Not arbitrary or capricious*

Pantera also asserts that the Commission's actions were arbitrary and capricious. In our original opinion, we expressed concern that by issuing an amended rule while these applications were pending, the Commission had changed the rules in the middle of the administrative process, a practice this Court condemned in *Flores v. Employees Retirement System*, 74 S.W.3d 532, 545 (Tex. App.—Austin 2002, pet. denied). In that situation a former employee who was denied benefits complained that the ERS board of trustees acted arbitrarily and capriciously by deviating from its own precedent, citing two decisions awarding benefits under similar circumstances. After a contested-case hearing before the administrative law judge who recommended that benefits be awarded, the ERS adopted a resolution that purported to change its policy and denied the benefits. We concluded that by adopting this new policy months after the hearing, without pre-hearing notice, when it was no longer possible for the employee to present her case differently, the ERS acted arbitrarily and capriciously.

By contrast, here the Commission announced at the beginning of the process that Pantera must give notice to offset operators and owners, and then never wavered from that position. The rules did not change in the middle of the process, but were applied consistently. Pantera insists that by requiring notice when an application was submitted under Former Rule 38(d)(3), the Commission deviated from its treatment of other similar applications. The Commission alleged that

14

it was following a longstanding practice to review all such applications for attempts to circumvent density provisions or other Commission rules before granting administrative approval. We find that there is sufficient evidence of this Commission practice to distinguish this situation from that condemned in *Flores*. We reject the assertion that the Commission acted arbitrarily and capriciously.

### *Vested rights not divested*

Pantera argues that even if the new rule was procedural in nature, it cannot be applied to these pending applications if its application would deprive Pantera of vested rights. "The rule is well settled that procedural statutes may apply to suits pending at the time they became effective, but even a procedural statute cannot be given application to a suit pending at the time it becomes effective if to do so would destroy or impair rights which had become vested before the act became effective." *Baker Hughes, Inc. v. Keco R. & D., Inc.,* 12 S.W.3d 1, 4 (Tex. 1999) (quoting *Wilson v. Work*, 62 S.W.2d 490, 490 (Tex. 1933)); *Grocers Supply*, 978 S.W.2d 638, 643 (Tex. App.—Austin 1998, pet. denied). We disagree that by changing the notice procedure, the Commission deprived Pantera of a vested right. Pantera had at best an expectation, not a right, to dissolve its units. It still has that remedy available after the amended rule, subject to a changed notice provision.

The production of oil and gas is subject to the Commission's jurisdiction and control. *See* Tex. Nat. Res. Code Ann. § 81.051 (West 2001). Pantera had no absolute right to do what it wished with its property but was subject to the Commission's oversight and regulation. Although Pantera cites *Buttes Resources Co. v. Railroad Commission* in support of its argument, that case turned on the fact that the Commission had set a retroactive effective date for the forced pooling of

15

certain acreage with another unit, which, the court held, deprived Buttes of its vested property rights;

the court did not, notably, hold that forced pooling itself is unlawful, even though it is "in derogation

of the right of one to do with his own property as he so desires." *See* 732 S.W.2d 675, 682 (Tex.

App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (quoting *Superior Oil Co. v. Railroad Comm'n*,

519 S.W.2d 479, 482 (Tex. Civ. App.—El Paso 1975, writ ref'd n.r.e.)). If forced pooling does not

unconstitutionally interfere with vested property rights, neither can procedural limits on the

unpooling of a unit. The procedural limits at issue here on Pantera's right to "do with its property

as it desires" are certainly within the Commission's authority to regulate oil and gas production in

Texas and do not interfere with a vested property right such as that at issue in *Buttes*.

Although Pantera argues that the Commission had no choice but to grant its

applications in the absence of a protest being filed, the issue of notice undeniably affected the

likelihood that a protest would be filed. That is what this dispute is all about. And we reject

Pantera's analogy that under its interpretation of the former rule it was entitled to a time bar to

prevent any timely protests. We hold that the application of the new notice provision did not divest

Pantera of any vested rights.

### Declaratory judgment

Pantera's declaratory-judgment action seeks the same relief as its two suits for judicial

review: a determination that the former rule applies to its applications, that Pantera was not required

to give notice to offset operators under the rule, and that the Commission acted arbitrarily and

capriciously in not granting its applications. Thus, its declaratory-judgment action is duplicative of

its other two suits and was properly dismissed by the district court. *See Young Chevrolet, Inc. v.*

16

*Texas Motor Vehicle Bd.,* 974 S.W.2d 906, 911 (Tex. App.—Austin 1998, pet. denied) (trial court properly dismissed declaratory-judgment action requesting same relief as administrative appeal).

## CONCLUSION

The notice requirement added by New Rule 38(d)(3) was a procedural change that applies prospectively to all pending applications, whenever filed. As such it superseded the notice requirement of the former rule and applied to all future steps concerning these applications. By expressly requiring notice to all affected persons described in subsection (h)(1)(A), the new rule moots the inquiry as to whether such notice could be required under the former rule. To decide whether the former rule allowed the Commission to require notice to offset operators and owners would constitute nothing more than an advisory opinion on an abstract question of law when the new rule expressly requires such notice. *Long*, 659 S.W.2d at 160-61. The district court properly held that the amended rule applied to Pantera's applications and made the controversy moot. The application of this notice requirement does not deprive Pantera of any vested rights. Furthermore, the declaratory-judgment action was duplicative of the issues presented in the two suits for judicial review. We affirm the district court's dismissal of all three lawsuits.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed on Motion for Rehearing

Filed:   February 5, 2004