Ronnie Vee HEBISEN and Dan Hennigan, Appellants,

v.

CLEAR CREEK INDEPENDENT SCHOOL DISTRICT, Harris County, Harris County Education Department, Port of Houston of Harris County Authority, Harris County Flood Control District, Harris County Hospital District, and City of Nassau Bay, Appellees.

No. 14–04–00983–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 10, 2006.

Rehearing En Banc Overruled Feb. 22, 2007.

Dan Hennigan, Houston, pro se.

R.V. Hebisen, League City, pro se.

Jason L. Bailey, Terry G. Wiseman, Houston, for appellees.

Panel consists of Justices HUDSON, FROST, and SEYMORE.

## MAJORITY OPINION

### J. HARVEY HUDSON, Justice.

This appeal arises from a suit to recover delinquent personal property taxes. Appellants, Dan Hennigan and Ronnie Vee Hebisen, bring four no-evidence challenges to the district court's judgment. At issue is whether appellants have provided a sufficient record on appeal to review their evidentiary arguments. We find the record is insufficient to review appellants' evidentiary arguments and affirm the judgment of the trial court.

Appellants are attorneys who shared office space. Clear Creek Independent School District ("CCISD") filed suit against appellants and other attorneys who occupied the office suite for delinquent personal property taxes.[1] Harris County and the City of Nassau Bay filed a plea in intervention (we refer to CCISD and the intervenors collectively as the "taxing authorities").[2] The trial court referred the matter to a tax master, Michael Landrum, who heard evidence on February 13, 2004, and issued a master's report. Landrum recommended the taxing authorities take nothing from Hebisen, that Hennigan is liable for delinquent taxes accrued for tax years 1998 through 2001, and the referring court's judgment provide for foreclosure of the tax lien.

Hennigan filed a general notice of appeal in the referring court contending the taxing authorities were not entitled to "*any* tax lien." (Emphasis added). Because the existence or non-existence of a tax lien was the ultimate issue to be decided, it is hard to interpret Hennigan's notice of appeal as anything other than a global challenge to every issue decided by the tax master. CCISD also appealed to the referring court. CCISD, however, restricted its appeal to whether it was entitled to "a judgment for personal liability and foreclosure of the tax liens for the 2002 and 2003 tax years." Hebisen did not appeal.

According to the docket sheet, the referring court held a bench trial and heard evidence on July 15, 2004. No reporter's record was made of the trial de novo. The court's final judgment states all remaining defendants (Hooper, Hennigan, Stephens, and Hebisen) had previously appeared and were given notice of the trial date. The trial court found Hennigan and Hebisen jointly and severally liable to the taxing authorities for delinquent taxes that had

---

1. CCISD sued Hennigan, Hebisen, Freddie Fraser, Delia Stephens, Cynthia Hooper, and Clear Lake Nasa L.P. ("Clear Lake"), the organization that leased the commercial office space to Hennigan. Clear Lake filed a cross-claim against Hennigan and a counterclaim against CCISD; the cross-claim was nonsuited. Hennigan filed a cross-action against Galveston County Appraisal District ("GCAD"); the cross-action was nonsuited. Fraser was nonsuited from the case. The trial court entered a take-nothing judgment in favor of Stephens and Hooper from which the taxing authorities do not appeal. Although the trial court does not specifically address Clear Lake in its judgment, "all parties named in any pleadings filed by any party and not included in the judgment" were dismissed, and Clear Lake is not a party to this appeal.

2. The following Harris County agencies are appellees in this cause: Harris County Education Department, Port of Houston of Harris County Authority, Harris County Flood Control District, and Harris County Hospital District. We refer to them collectively as "Harris County." However, only CCISD, filed an appellate brief.

accrued on personal property valued at $24,320.00 for tax years 1998 through 2003, and for penalties, interest, and attorneys' fees.[3] The judgment also authorized the taxing authorities to obtain all writs and processes necessary to enforce and collect the judgment. The trial court's judgment indicates the case was "called" on February 13, 2004 (the day of the hearing before the tax master). No party contests the fact that the trial court's judgment differs from Landrum's report by finding Hebisen liable and by adding recovery for tax years 2002 and 2003.

Appellants timely filed a joint notice of appeal from the trial court's judgment. They argue there is no evidence: (1) they owe any taxes, (2) they owned taxable property within appellees' taxing jurisdiction on January first of each taxable year, (3) they owned taxable property jointly within appellees' taxing jurisdiction, or (4) of any appraisal by the appropriate appraisal districts of any property in the amount found by the trial court. Appellants have provided an appellate record consisting only of a clerk's record and a reporter's record of the hearing before Landrum. They urge "[t]he issues raised in this appeal relate to matters not appeal-ed to the referring court and are properly before this court with the statement of facts made before the tax master...." They rely on Tax Code section 33.74, subsections (c), (d) and (i) in arguing the referring court was limited to hearing only those issues specifically challenged on de novo appeal, so that issues left unchallenged before the referring court may be appealed separately to this court using only the tax master transcript.[4] CCISD, however, contends the evidence and testimony presented before the tax master is not the evidence heard by the referring court. CCISD further argues that the record under review is the one made by the referring court, not the tax master. We agree.

Hennigan submitted a broad, global notice of appeal challenging the master's recommendation of *any* tax lien. Hebisen, on the other hand, gave no notice of appeal.

 Hennigan's notice of appeal should have been limited to specific findings.[5] However, by filing a general notice of appeal, Hennigan effectively challenged every finding of the tax master.[6] While the referring court was not required to

---

3. CCISD was the only taxing authority to seek and obtain delinquent taxes for 1998.

4. Subsection (c) provides "[a]ll appeals to the referring court shall be in writing specifying the findings and conclusions of the master that are objected to and the appeal shall be limited to those findings and conclusions." TEX. TAX CODE ANN. § 33.74(c) (Vernon 2001). Subsection (d) *continues*: "On appeal to the referring court, the parties may present witnesses as in a hearing de novo only on the issues raised in the appeal." *Id.* § 33.74(d). Section 33.74(i) states:

The failure to appeal to the referring court, by waiver or otherwise, a tax master's report that is approved by the referring court does not deprive any party of the right to appeal to or request other relief from a court of appeals or the supreme court.

*Id.* § 33.74(i).

5. TEX. TAX CODE ANN. § 33.74(c); *see also In re E.M.*, 54 S.W.3d 849, 852 (Tex.App.-Corpus Christi 2001, no pet.) (finding failure to specify challenged findings or conclusions of associate judge in appeal to referring court as required by statute deprived appellant of right to hearing de novo in referring court).

6. Hennigan's notice of appeal stated, in pertinent part:

Defendant specifically appeals the legal conclusion (recommendation) that the Plaintiffs are entitled to the foreclosure of any tax lien. Based on the factual findings made by the tax master, Plaintiff's [sic] are not entitled to the foreclosure of any alleged tax lien.

entertain such a broad appeal, once it did so, it was required to conduct a full trial de novo. Accordingly, the only record appropriate for our review of Hennigan's appeal is the record from the de novo hearing in the referring court. We have no such record. Thus, we have nothing to review.

██ Even if Hennigan's notice of appeal to the referring court could be construed as limiting in some fashion the issues under review, none of the subsections cited by Hennigan permit a party to appeal in part to the referring court while reserving other issues for a higher court's review. Such practice would mislead the trial court into believing the parties agree with the tax master's assessment and enter judgment upon this mistaken belief. We find, when hearing an appeal de novo from a tax master's recommendations, the referring court *may*, in its discretion, treat all uncontested issues as conclusive. Moreover, an appellant may not thereafter challenge the trial court's judgment on the theory that the tax master's report was not supported by sufficient evidence.

██ Although the Tax Code is silent on this issue, our finding is supported in other contexts. The Family Code provides for referral to an associate judge using a procedure almost identical to that found in the Tax Code. TEX. FAM.CODE ANN. §§ 201.001–.018 (Vernon 2002 & Supp. 2004–05); *Godwin v. Aldine Indep. Sch. Dist.*, 961 S.W.2d 219, 221 (Tex.App.-Houston [1st Dist.] 1997, writ denied). When parties appeal from an associate judge's findings in a family law case, evidence will be heard de novo by the trial court only on objected-to issues. The master's findings are conclusive on any unobjected-to issues and the trial court "has no occasion to inquire into the evidence heard by the master." *See Cameron v. Cameron*, 601 S.W.2d 814, 815 (Tex.App.-Dallas 1980, no writ) (finding appellant cannot attack trial court findings on grounds the record made before the master contains insufficient evidence); *see also Robles v. Robles*, 965 S.W.2d 605, 612 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) ("[I]f a proper objection to a master's recommendations and findings is not filed *before* those findings are adopted by the referring court, those findings become conclusive on the issues considered by the tax master."). This conforms to century-old caselaw concluding reports issued by auditors or masters appointed under the Texas Rules of Civil Procedure are conclusive on all unobjected-to issues. *Eagle Mfg. Co. v. Hannaway*, 90 Tex. 581, 40 S.W. 13, 13 (1897); *Minnich v. Jones*, 799 S.W.2d 327, 328 (Tex.App.-Texarkana 1990, no writ); *Moore v. Waco Bldg. Ass'n*, 9 Tex.Civ.App. 404, 28 S.W. 1033, 1033 (1895, no writ).[7] Therefore, there will be no occasion for this court to look at the transcript made before the tax master *when there has been an appeal de novo to the trial court. See* TEX. TAX CODE ANN. § 33.74(i) (*failing* to appeal to trial court does not limit further appeals).[8] By filing an appeal to the referring court challenging only part of the master's report, the appealing party concedes that the master was correct as to the

---

7. Although we recognize the Tax Code specifically forbids the *appointment* of masters under Texas Rule of Civil Procedure 171, we find this caselaw persuasive in light of the Tax Code's silence on this issue. TEX. TAX CODE ANN. § 33.78.

8. Hebisen's failure to appeal a favorable recommendation is understandable and expected. It does not, however, place him within the ambit of Tax Code section 33.74(i) because (1) the trial court did not approve the tax master's report and (2) a notice of appeal to the referring court *was* timely filed which raised issues potentially involving Hebisen, namely his tax liability for the 2002 and 2003 tax years. TEX. TAX CODE ANN. § 33.74(i).

unchallenged part, and therefore the referring court has "no occasion" to inquire into evidence on the unchallenged issues.

Unlike Hennigan, Hebisen filed no notice of appeal to the referring court and challenged no findings of the tax master. Hebisen seems to implicitly suggest he had no obligation to appear at the de novo hearing before the referring court. He argues the only appropriate record for our review is the record prepared by the tax master.

■ Hebisen, however, was on notice that other parties had given notice of appeal. For example, CCISD appealed the master's denial of "personal liability" for tax years 2002 and 2003. CCISD did not limit its appeal to only Hennigan's personal liability for these years. Moreover, Hebisen was also alerted to the fact that Hennigan had filed a broad, sweeping appeal requiring the referring court to conduct a trial de novo on virtually every issue. Thus, Hebisen was on notice that issues pertaining to him would be litigated in a trial de novo before the referring court. However, the Tax Code provides that when a de novo hearing is required before the referring court, such hearing "shall be limited to those findings and conclusions" specifically challenged in the notice of appeal. TEX. TAX CODE ANN. § 33.74(c). Accordingly, the issue before us is to what extent is a party required to appear and present evidence in a hearing de novo that is initiated by another party's notice of appeal, when he himself is satisfied with the recommendations of the master and has filed no notice of appeal.

■ Section 33.74(c) uses the word "shall." *Id.* Courts generally construe the word "shall" as mandatory. *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex. 1999). However, courts have construed the word "shall" as merely directive when legislative intent supports such a construction. *Pantera Energy Co. v. R.R.Comm'n of Tex.*, 150 S.W.3d 466, 474 (Tex.App.-Austin 2004, no pet.). In determining whether a statutory provision is directive or mandatory, a court should consider the entire act, its nature and object, and the consequences that would follow from either construction. *Id.*

■ The purpose of a master is to assist, not supplant, the trial judge. First, the trial judge has the discretion to appoint or not appoint a master "as desired" and to specify or limit his powers. TEX. TAX CODE ANN. § 33.71 (Vernon 2002). Second, the master's report is returned as a "recommendation" in that, unless there is an appeal, the trial court may confirm, modify, correct, reject, reverse, or recommit the report as the court may deem proper and necessary in the particular circumstances of the case. *Id.* § 33.73 (Vernon 2001). Finally, where there is no appeal, the findings and recommendations of the master become the decree or order of the referring court only if the referring court signs an order or decree conforming to the master's report. *Id.* § 33.75 (Vernon 2001).

Of course, a master is of no assistance to the trial court if a disgruntled party can render the entire master's report a nullity by simply filing an appeal. Thus, to promote judicial efficiency, the dissatisfied party must precisely identify the specific findings he intends to challenge on appeal. *Id.* § 33.74(c). Moreover, the parties may present witnesses only on the issues raised in the appeal. *Id.* § 33.74(d).

■ However, when a party gives notice of appeal, certain restrictions are imposed upon the referring court. For example, due process considerations are observed in that all parties must be provided with copies of the notice of appeal. *Id.* § 33.74(e). And while "the appeal shall

be limited to those findings and conclusions" raised in the notice of appeal, we interpret this provision as a due process safeguard to protect non-appealing parties, not as a jurisdictional prerequisite. *See id.* § 33.74(c). Moreover, while a referring court may not "confirm, modify, correct, reject, reverse, or recommit" a master's report once a notice of appeal has been filed, we construe this provision as another due process protection that prevents any final disposition of the case until the trial judge has conducted a de novo hearing on the matters being appealed. *See id.* § 33.73. In other words, once the referring court has conducted a de novo hearing, it may then "confirm, modify, correct, reject, reverse, or recommit" the master's report as it deems proper and necessary in the particular circumstances of the case. Any other construction would forever prevent the referring court from finalizing its judgment.[9]

■■■ We find support for this construction from the legislature's expression of its intent. Outside of the limited use of masters in chancery under Texas Rule of Civil Procedure 171, masters (now called "associate judges" in the family law context) were first used in family courts. While these "parajudicial personnel" were employed to relieve full dockets, as a check on their use, concerned legislators warned they "must never become independent of the judges they serve." *See* INTERIM REPORT, TEX. HOUSE JUDICIAL AFFAIRS COMM.: Parajudicial Personnel, 67th Leg., p. 20 (1979) (recommending use of masters in family courts but warning that widespread use of commissioners in California led to inadequate review by judges). The use of masters expanded beyond family law and into tax law "... to relieve the [referring] court by handling routine hearings or to bring specialized knowledge to complicated situations." HOUSE COMM. ON WAYS & MEANS, BILL ANALYSIS, TEX. H.B. 1625, 68th Leg., R.S. (1983). Masters were never intended as a means of replacing trial judges, and "they must never diminish the quality of justice available to our citizens ..." INTERIM REPORT, TEX. HOUSE JUDICIAL AFFAIRS COMM.: Parajudicial Personnel, 67th Leg., p. 20 (1979). Therefore, although the trial court is limited to hearing evidence de novo only as to those specific

---

9. Although we have found no caselaw interpreting the above-mentioned Tax Code provisions, we find these provisions are clear and unambiguous on their face. *See McIntyre v. Ramirez,* 109 S.W.3d 741, 745 (Tex.2003) (quoting *Tex. Dep't of Transp. v. Needham,* 82 S.W.3d 314, 318 (Tex.2002)) (stating primary objective when construing a statute is to give effect to legislature's intent and courts interpret statute according to its plain meaning if language is unambiguous). A district court may refer delinquent tax suits to a tax master, who is then authorized to conduct evidentiary proceedings and recommend a final judgment. TEX. TAX CODE ANN. § 33.71. Any party may secure a de novo hearing on specific issues before the referring court by timely filing a notice of appeal of the master's report. *Id.* § 33.74(a), (c)-(d). The Tax Code limits the hearing de novo in the referring court to those findings and conclusions specif-

ically appealed in writing. *Id.* § 33.74(c)-(d). It also allows for appeal to a higher court when (1) a party has failed to appeal to the referring court and (2) the referring court has approved the tax master's report. *Id.* § 33.74(i); *see also id.* § 33.75 (stating the master's findings and recommendations become the decree of the court if there is no appeal to the referring court once that court signs a decree or order conforming to the master's report); *Loera v. Interstate Inv. Corp.,* 93 S.W.3d 224, 229 n. 4 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (noting failure to appeal tax master's report to referring court does not preclude review by appellate court). The Tax Code provides that a referring court is not bound by the tax master's recommendations. *See* TEX. TAX CODE ANN. § 33.73 (stating trial court may confirm, modify, correct, reject, reverse, or recommit master's report as it deems proper unless written

issues appealed, this does not mean the trial court lacks *jurisdiction* to hear evidence beyond this scope, and any judgment issued that may be based on such evidence is not void. *See, e.g., Godwin,* 961 S.W.2d at 221 (finding statutory provision mandating hearing in referring court within 45 days upon a party's filing a proper notice of appeal provides party a mechanism with which to compel referring court to hear appeal promptly and does not deprive court of jurisdiction over appeal).

██ Appellants suggest that once an appeal has been filed, the referring court must accept the master's report on all unchallenged findings and issues. Certainly, this was not the legislature's intent. A party may not appeal a single recommendation and, by so doing, *compel* the trial court to accept the master's opinion on all remaining issues.

██ Because Hebisen never appealed from Landrum's report, he contends the referring court could not conduct a de novo review of his tax liability. We find no merit in this argument. First, by his general notice of appeal, Hennigan virtually mandated that the referring court conduct a trial de novo on the entire matter, and Hebisen was notified of the date of this de novo hearing. Second, he knew CCISD's appeal subjected him to potential liability for 2002 and 2003 tax years. As the referring court, the trial judge never lost juris-

diction over the case. The court could consider and rule upon any aspect of the case whether appealed or not. Of course, Hebisen could have appeared at the de novo hearing and protected his due process rights by objecting to any evidence he believed exceeded the scope of appeal. However, absent a timely objection and ruling, we will not consider a party's argument that evidence before the referring court was beyond its scope on appeal.[10] Tex.R.App. P. 33.1. Moreover, until a final, appealable, order was signed, none of the issues were resolved and all parties not nonsuited from the case had a duty to (1) be present at the de novo hearing, (2) ensure a record was made in order to pursue an appeal, and (3) defend their claims or risk default. *See, e.g., Godwin,* 961 S.W.2d at 221 (explaining trial de novo is a new and independent action characterized by all the attributes of an original civil action). We find this is true even when trial de novo is limited to only a few issues. *See, e.g., Attorney Gen. of Tex. v. Orr,* 989 S.W.2d 464, 469 (Tex.App.-Austin 1999, no pet.) (holding in family law context that when party files notice of appeal from associate judge's report, a decision on the merits must be made as if no proceedings had occurred before the associate judge and if appealing party defaults the referring court should proceed to the extent required in a post-answer default.).

██ Appellants also cite the trial court's judgment stating February 13,

---

notice of appeal to the referring court has been made).

10. Although appellants argue the scope of the trial court's authority in the de novo hearing was limited to particular issues, they do not attack the validity of the trial court's judgment on grounds the court exceeded its authority at the de novo hearing. The argument they make, however, is at odds with their issues presented. Although they seek to undermine the trial court's judgment on grounds it lacks evidentiary support, they essentially argue they are properly appealing

issues never presented to the trial court. These particular issues—insufficient evidence—do not need to be preserved before the referring court to be heard on direct appeal here. Tex.R.App. P. 33.1(d) (allowing that a party may always appeal the sufficiency of evidence supporting a trial court's judgment in nonjury cases). However, appellants must present a sufficient record for our review or their claims will necessarily fail. *Vickery v. Comm'n for Lawyer Discipline,* 5 S.W.3d 241, 251 (Tex.App.-Houston [14th Dist.] 1999, pet. denied).

2004 as the date the case was "called," and urge "appellees' [sic] may not now impeach the date on which the court based its decision." CCISD argues the judgment's statement that trial was held on February 13, 2004, is a mere clerical error, and does not indicate what evidence the court relied upon. We agree.[11]

Public policy favors the validity of judgments. *Vickery*, 5 S.W.3d at 251. Therefore, we apply the presumption that a judge has conscientiously performed his or her duty in inverse relation to the amount of knowledge made available to this court. *Id.* Where there is neither reporter's record nor findings of fact, we assume the trial court heard sufficient evidence to make all necessary findings in support of its judgment. *Id.* Therefore, while appellants may properly challenge the legal sufficiency of evidence supporting the trial court's judgment against them, they cannot prevail in any evidentiary challenge without first meeting their burden of presenting a sufficient record on appeal. *Schafer v. Conner*, 813 S.W.2d 154, 155 (Tex.1991) (per curiam); *Englander Co. v. Kennedy*, 428 S.W.2d 806, 806–07 (Tex.1968) (per curiam); *Roob v. Von Beregshasy*, 866 S.W.2d 765, 766 (Tex. App.-Houston [1st Dist.] 1993, writ denied). Because there is no record of the de novo hearing before the trial court, we must assume the missing record contains sufficient evidence to support the trial court's judgment. We overrule each of appellants' no-evidence issues. The district court's judgment is affirmed.

FROST, J., concurring.

KEM THOMPSON FROST, Justice, concurring.

The court correctly overrules the appellants' legal-sufficiency issues based on the absence of a record from the July 15, 2004 bench trial (the "Bench Trial"). While the majority's judgment is correct, much of its analysis is unnecessary to the disposition of this appeal.

The parties appealed some, but not all, of the issues that were the subject of the master's report. As to the appealed issues, the trial court had a duty to conduct a de novo hearing. The scope of the appeals was limited to the issues specified in the notices of appeal, and the trial court had no obligation to address the issues that were not appealed. Nonetheless, the trial court still had the discretion to hear evidence regarding the unappealed issues and to render a different judgment regarding these issues than that recommended by the master.

The trial court sent notice to all parties, including the appellants, that the entire case was set for trial for the two-week period beginning July 12, 2004. The notice did not state that the hearing was limited to the issues specified in the appeals from the master's report. By not seeing to it that a record was made of the Bench Trial, the appellants subjected themselves to the presumption that the proceedings and evidence from the Bench Trial are relevant to the appellants' issues

---

11. The judgment's recitation of the date the case was "called" does not give rise to the conclusion that it was based solely on evidence entered on that date, and any contention otherwise is untenable, especially in light of the docket sheet notation that the court heard evidence on July 15th. We indulge "all presumptions consonant with reason" ·in order to uphold the binding effect of the trial court's judgment. *Vickery*, 5 S.W.3d at 251 (quoting *Jackson ·v. Slaughter*, 185 S.W.2d 759, 761 (Tex.App.-Texarkana 1944, writ ref'd w.o.m.)). We will not, therefore, entertain appellants' attempt to benefit from a trial court's clerical error by providing only a partial record to this court on appeal.

and support the trial court's judgment. *See, e.g., Hiroms v. Scheffey,* 76 S.W.3d 486, 489 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (holding appellate court could not address merits of alleged charge error because appellate record did not contain complete record of trial proceedings). Accordingly, the court correctly affirms the trial court's judgment based on the absence of a record from the Bench Trial.

The majority indicates in several places that appellant Dan Hennigan's notice of appeal was sufficient to appeal all of the issues encompassed by the master's report. *See ante* at pp. 530, 531–32, 533. Though Hennigan's notice of appeal may have been sufficient to appeal all of the master's recommendations as to Hennigan, it was not sufficient to require the trial court to hear an appeal regarding appellant Ronnie Lee Hebison's liability. Nonetheless, this court need not address the issue of the scope of the appeals by Hennigan and Clear Creek Independent School District because, without a record of the Bench Trial, we must presume the omitted record supports the trial court's judgment.

Appellants Hebison and Hennigan (hereinafter collectively the "Taxpayers") argue that, even though no record was made of the Bench Trial, they still may assert legal-sufficiency issues challenging the trial court's September 14, 2004 judgment[1] following the Bench Trial. The Taxpayers claim that this court should evaluate these sufficiency challenges based on the reporter's record from the master's hearing on February 13, 2004 because the issues they raise were not within the scope of the appeals and therefore could not have been addressed during the Bench Trial. In support of this argument, the Taxpayers cite section 33.74 of the Tax Code and correctly note that (1) appeals from the master's report are limited to the issues specified in the notices of appeal and (2) the notices of appeal did not challenge every issue that was before the master. *See* TEX. TAX CODE § 33.74 (Vernon 2001). In some instances, no party may appeal from the master's report. In other cases, the parties may challenge every issue addressed in the master's report in their notices of appeal. The instant case involves a different situation—the parties appealed some, but not all, of the issues before the master.

Section 33.74, however, does not limit the referring court's discretion to hear evidence regarding the unappealed issues and to render a different judgment regarding these issues than that recommended by the master. *See id; see also Ex parte Skero,* 875 S.W.2d 44, 46 (Tex.App.-Houston [1st Dist.] 1994, orig. proceeding). As the majority notes, the associate-judge statute in the Family Code is substantially similar to the statute at issue. *See ante* at p. 532. In a case dealing with the predecessor statute to the associate-judge statute currently found in the Family Code, the First Court of Appeals held that the referring court had discretion to accept or reject the master's recommendations and to hold a hearing as to whether it would do so. *See Ex parte Skero,* 875 S.W.2d at 45–46. The *Skero* court held that, because the trial court, after holding a hearing, rendered a judgment different from the master's recommendations, the appellate court could not sustain any challenge to that judgment without a record from the trial court hearing. *See id.* at 46. Because the appellate record in *Skero* did not contain a record of the hearing before the trial court, the *Skero* court held that it could not sustain the challenges asserted against that judgment. *See id.*

The *Skero* court's analysis is persuasive. While the trial court in the instant case had an obligation to conduct a de novo

---

1. The majority correctly concludes that the reference in the trial court's judgment to the date of the master's hearing is a clerical error.

hearing and to rule on whatever issues were within the scope of the appeals, it also had the discretion to hear evidence regarding the unappealed issues and to render a different judgment regarding these issues than that recommended by the master. *See id.*

Though our record does not reflect what occurred at the Bench Trial, it does contain the notices of the trial setting sent to the Taxpayers. These notices do not refer to the appeals from the master's report; rather, they give notice that the entire case is set for trial. In the absence of a reporter's record from the Bench Trial, this court must presume that the omitted proceedings are relevant to and support the trial court's judgment. *See Hiroms,* 76 S.W.3d at 489. Therefore, this court must presume that (1) the trial court exercised its discretion to hear evidence regarding all of the issues, whether appealed or not, and (2) the trial court heard evidence that is legally sufficient to support its judgment. *See id.*

Despite receiving notice of the trial setting, the Taxpayers did not take the necessary steps to see that a record was made of the Bench Trial. Accordingly, this court must apply the common-law presumption for cases in which there is no record of the trial, and overrule the Tax-

payers' issues. *See Ex parte Skero,* 875 S.W.2d at 45–46.

The court correctly concludes that the trial court had the ability to hear evidence beyond the scope of the appeals and that a referring court can depart from the master's recommendations, even recommendations that are not appealed to the referring court. *See ante* at p. 535. Based on these conclusions, it is unnecessary to address several of the issues discussed in the majority opinion.[2] Because the court reaches the right result, for the reasons noted, I respectfully concur in the court's judgment.

2. The court need not address the following issues:

- Do the issues specified in the notices of appeal cover all of the issues that were before the master? *See ante* at pp. 530, 531–32, 533.
- Does Hennigan's notice of appeal require the trial court to conduct a full trial de novo of all issues? *See ante* at pp. 531–32, 535.
- May a party appeal some, but not all, of the issues contained in a master's report and still appeal the unchallenged issues to the court of appeals after the trial court renders final judgment? *See ante* at p. 532.
- In a case in which a party appeals from an associate judge's recommendations in a family law case, may the referring court

hear evidence only as to the issues specified in the appeal? *See ante* at p. 532.
- Will an appellate court ever need to review the reporter's record from a master's hearing in cases in which a party challenges the master's report by appeal to the referring court? *See ante* at p. 532.
- By challenging some but not all of the issues by appeal to the referring court, does a party waive its right to appeal the unchallenged issues to the court of appeals? *See ante* at p. 533.
- What does "shall" mean as used in section 33.74(c)? *See ante* at p. 533.
- What is the legislative history regarding the master statute in the Family Code? *See ante* at pp. 534–35.