**Opinion issued June 2, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00554-CV

———————————

**ROBERT PETERSON, Appellant**

**V.**

**ROGER KROSCHEL, III, Appellee**

**and**

**ROGER KROSCHEL, III, Appellant**

**V.**

**ROBERT PETERSON, Appellee**

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 57875**

# MEMORANDUM OPINION

Robert Peterson and Roger Kroschel, III appeal the judgment following a jury trial rendered in favor of Peterson in Peterson's suit for breach of fiduciary duty. In two issues, Peterson contends that (1) the trial court erred in refusing to grant his request for declaratory judgment, and (2) the trial court erred in failing to conform the judgment to the jury's verdict because it did not award Peterson future lost profits or attorney's fees. In two issues, Kroschel contends that (1) the trial court erred in denying his motion to disqualify Peterson's trial counsel, and (2) there was legally and factually insufficient evidence to support the jury's finding that Peterson suffered past lost profits. We affirm the trial court's denial of future damages and attorney's fees, and refusal to grant additional declaratory relief, and we reverse the award of past damages and render judgment that Peterson take nothing on his claims.

## Background

On June 10, 2008, Peterson's excavation company, Terra Dragline, and Kroschel's trucking company, Rockin' R Trucking, entered into a contract with the Angleton Drainage District to remove sand from a pit.[1] A week later, Peterson and Kroschel filed an assumed name certificate certifying their desire to create the

---

[1] The agreement stated that the contract was being entered into by "Rockin' R Trucking in concert with Terra Dragline, a single purpose joint venture."

Angleton Sand Company, a general partnership. They did not enter into a written partnership agreement.

Under the terms of their informal agreement, Peterson and Terra Dragline would dig the sand, Kroschel and Rockin' R Trucking would haul the sand, and Peterson and Kroschel would split the profits from their new business fifty-fifty. Kroschel handled the books for Angleton Sand in 2008 and 2009 and Peterson took over these responsibilities in 2010.

In July or August 2009, Peterson and Kroschel purchased a John Deere tractor/scraper (the tractor) that was used by Angleton Sand. Kroschel and Peterson, as buyer and co-buyer respectively, signed an installment contract with John Deere in which they both agreed to be jointly and severally liable for the purchase price of the tractor. Under the terms of that agreement, John Deere has several remedies against Kroschel and Peterson, individually, in the event of default, including repossession of the equipment and the recovery of the balance on the account as liquidated damages.

Peterson took out a loan for $44,423.21 from a friend in order to pay the $37,000 down payment on the tractor and put up Terra Dragline's trackhoe as collateral. The loan was deposited into Angleton Sand's bank account and the down payment to John Deere was paid from that account. Subsequent payments on the tractor were also paid from Angleton Sand's bank account.

Peterson filed suit against Kroschel for fraud, constructive fraud, breach of fiduciary duty, conversion, unjust enrichment, and gross negligence. Peterson also made a demand for an accounting and a request for declaratory judgment. In particular, Peterson alleged that Kroschel breached his fiduciary duty by taking more than fifty percent of the profits from Angleton Sand. According to Peterson, Kroschel diverted $120,000 "from the profits that should have been shared, in excess of his portion of such profits."

At trial, Peterson testified that he and Kroschel had an informal agreement to split Angleton Sand's profits fifty-fifty. Peterson offered conflicting testimony, however, regarding his agreement with Kroschel on the payment of expenses. Peterson initially testified that he and Kroschel were supposed to pay their own expenses, at least initially, because they "were building a company, and you can't pull all the money out of it right away. It can't survive." The next day, Peterson testified that Terra Dragline and Rockin' R Trucking were entitled to be reimbursed by Angleton Sand for any expenses they incurred as a result of their work for Angleton Sand. Similarly, Kroschel testified that under the terms of his agreement with Peterson, Terra Dragline and Rockin' R Trucking would provide equipment, labor, and employees to Angleton Sand and if either company incurred expenses as a result of their work for Angleton Sand, the company would be reimbursed by Angleton Sand. Peterson and Kroschel both testified that while

4

Kroschel was reimbursed by Angleton Sand for Rockin' R Trucking's expenses in 2008 and 2009, Peterson paid Terra Dragline's expenses and did not seek reimbursement from Angleton Sand.

Peterson testified that he and Kroschel jointly owed approximately $150,000 to John Deere for the tractor and that he was asking the jury to award him Kroschel's half of the debt as future damages. Peterson also offered conflicting and internally inconsistent testimony regarding the amount of his past damages as a result of Kroschel's breach. Peterson acknowledged that he was testifying largely from memory and that his memory of the business's bookkeeping was not good. Peterson did not offer any expert testimony on the issue of damages. Angleton Sand's banking records and tax returns for 2008, 2009, and 2010 were admitted without objection at trial.

Kroschel testified that based on Angleton Sand's banking records, the company had a net income of approximately $35,758 in 2008 (income minus expenses paid) and that he distributed $32,000 of that income to himself and none to Peterson. Kroschel testified that Angleton Sand had a net income of approximately $96,950 in 2009 based on the company's banking records and that he paid $71,300 to himself and $28,000 to Peterson that year. The record also demonstrates that Peterson collected an additional $10,000 in 2009 for a total

5

payment of $38,000. According to Kroschel, Angleton Sand's banking records showed a loss of approximately $5,164 in 2010.

Peterson's attorney also testified in support of Peterson's request for attorney's fees.

After a three-day trial, the jury found that Kroschel breached his fiduciary duty to Peterson and awarded Peterson $83,762.50 for past damages and $75,000 in future damages. The jury also awarded Peterson $20,000 in attorney's fees for trial and an additional $7,000 in fees in the event of an appeal. Peterson subsequently filed a motion asking the court to declare that Angleton Sand Company was a limited-purpose partnership that terminated when Kroschel withdrew from the partnership in March 2010 and that the partnership had no equity in the tractor-scraper, and to declare that the "tractor-scraper should be awarded to Robert Peterson." Kroschel filed a motion for judgment notwithstanding the verdict (JNOV) challenging the jury's award of future lost profits and attorney's fees.[2]

The trial court entered judgment awarding Peterson $83,762.50 in past damages, plus pre-judgment and post-judgment interest. The judgment further

---

[2]     Kroschel's motion for JNOV also challenged the jury's findings that he committed gross negligence and fraud. Peterson is not appealing the trial court's granting of Kroschel's motion for JNOV on these two issues.

states: "IT IS HEREBY ORDERED, ADJUDGED AND DECLARED, that Angleton Sand was a general partnership."

This appeal followed.

## Disqualification of Counsel

In his first issue, Kroschel contends that the trial court erred in denying his motion to disqualify Robinson, Peterson's trial counsel. At the outset of the case, Kroschel filed a motion to disqualify attorney Robinson pursuant to Rules 1.05 and 1.09 of the Texas Disciplinary Rules of Professional Conduct, in which he alleged that Robinson was currently representing him another case involving Angleton Sand, and that her employment in this case created a risk that Kroschel's confidential communications with her would be endangered, or that his interests would be otherwise damaged. The record reflects that the trial court denied the motion after a hearing, a transcript of which is not included in the appellate record.

An appellant has the burden to bring forward a sufficient record to show the trial court's claimed error. *Nicholson v. Fifth Third Bank*, 226 S.W.3d 581, 583 (Tex. App.—Houston [1st Dist.] 2007, no pet.). In the absence of a reporter's record, we must presume that the omitted evidence supports the trial court's judgment. *See Bennett v. Cochran*, 96 S.W.3d 227, 229–30 (Tex. 2002) (per curiam); *Schafer v. Conner*, 813 S.W.2d 154, 155 (Tex. 1991) (per curiam). We also assume that "the trial court heard sufficient evidence to make all the necessary

7

findings in support of its judgment." *Hebisen v. Clear Creek Indep. Sch. Dist.*, 217 S.W.3d 527, 536 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Because Kroschel has not brought forth a record of the hearing on his motion to disqualify Robinson, we presume that the omitted evidence supports the trial court's denial of Kroschel's motion and we assume that the trial court heard sufficient evidence to make all the necessary findings in support of its denial of the motion. *See Bennett*, 96 S.W.3d at 229–30; *Hebisen*, 217 S.W.3d at 536; *see generally* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.09, cmt. 4 (whether reasonable probability exists that representation would involve unauthorized disclosure of confidential information under Rule 1.05 is question of fact). Accordingly, we hold that Kroschel has not preserved this issue for our review.

We overrule Kroschel's first issue.

## Legal and Factual Sufficiency

In his second issue, Kroschel contends that the evidence supporting the jury's finding that Peterson suffered past "lost profits" is legally and factually insufficient.

### A. Standard of Review

When addressing a challenge to the legal sufficiency of the evidence to support the jury's findings, we review the entire record, credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors

could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). We may not sustain a legal sufficiency, or "no evidence," point unless the record demonstrates: (1) a complete absence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810; *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005). Evidence does not exceed a scintilla if jurors "would have to guess whether a vital fact exists." *City of Keller*, 168 S.W.3d at 813.

When reviewing a challenge to the factual sufficiency of the evidence to support the jury's findings, we consider all the evidence and set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We must examine both the evidence supporting and that contrary to the judgment. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

Under either type of challenge, the jury is the sole judge of the weight and credibility of the evidence, and is entitled to resolve any conflicts in the evidence and to choose which testimony to believe. *See City of Keller*, 168 S.W.3d at 819.

9

We therefore assume that jurors decided questions of credibility or conflicting evidence in favor of the verdict if they reasonably could do so. *Id.* at 820. We do not substitute our judgment for that of the jurors if the evidence falls within this zone of reasonable disagreement. *Id.* at 822.

## B.    Analysis

Although Kroschel contends that the evidence supporting the jury's finding that Peterson suffered past "lost profits" is insufficient, the record reflects that the jury instruction on damages was not based on "lost profits," but rather, actual damages measured by the amount of profits due to Peterson and Kroschel.

Here, Question 3 instructed the jury that if they found that Kroschel had not complied with his fiduciary duty to Peterson, then they were to determine "[w]hat sum of money, if any, if paid now in cash, would fairly and reasonably compensate [Peterson] for his damages, if any, that were proximately caused by such conduct." The jury was further instructed to "[c]onsider the following elements of damages, if any, and none other."

> The amount of profits from the operation of Angleton Sand that rightfully belong to [Peterson] that were retained by [Kroschel].
>
> In making this determination, you are instructed that you may offset against this amount the amount of profits from the operation of Angleton Sand that rightfully belong to [Kroschel] that were retained by [Peterson], if any.

10

The charge did not define "profits" and the jury was instructed to give undefined terms their "commonly understood" meaning. "Profit" has been defined as "the gain after all expenses are subtracted from the total amount received." WEBSTER'S NEW ENCYCLOPEDIC DICTIONARY 806. Based on these instructions, the jury awarded Peterson $83,762.50 "for actual damages sustained in the past."

Although Kroschel objected to Question 3 on the basis that Peterson did not request "future damages" in his pleadings, Kroschel did not object to the charge's measure of damages or request any additional instructions or definitions with respect to "lost profits."[3] Where a party does not complain that the charge's measure of damages was improper or otherwise object to the charge, an appellate courts measures the sufficiency of the evidence for damages based on the language in the jury charge that was given. *Faucette v. Chantos*, 322 S.W.3d 901, 912 (Tex. App.—Houston 14th Dist. 2010, no pet.). Accordingly, we will evaluate the award of damages based on Question 3. *See id.*; *see also Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (holding, when no objection is made to jury charge, sufficiency of evidence is measured against charge given by court rather than some other unidentified law).

On appeal, Peterson argues that Kroschel's testimony that he paid himself approximately $103,000 from Angleton Sand's bank account in 2008 and 2009 is

---

[3] Kroschel is not complaining about the jury charge on appeal.

legally and factually sufficient to support the jury's award of $83,762.50. The jury was instructed to calculate damages based on "[t]he amount of profits from the operation of Angleton Sand that rightfully belong to [Peterson] that were retained by [Kroschel]." The testimony Peterson relies upon demonstrates that Kroschel was paid a certain sum from Angleton Sand's bank account; but, it does not demonstrate how much of that money "rightfully belong[ed] to Peterson."

Peterson acknowledges that the damages testimony in this case is confusing, but he argues that the factfinder has discretion to award damages within the range of evidence presented at trial and that we may not disregard the jury's assessment of damages because their reasoning is unclear. *See Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002) (stating that for purposes of legal sufficiency review, jury has discretion to award damages within range of evidence presented at trial); *Hertz Equip. Rental Corp. v. Barousse*, 365 S.W.3d 46, 57 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (stating that for purposes of legal and factual sufficiency review, factfinder has discretion to award damages within range of evidence presented at trial, so long as rational basis exists for its calculation). Although there is testimony and evidence regarding a wide range of alleged damages suffered by Peterson based on different theories and calculations, none of these calculations appear to track the method for calculating damages set forth in the jury charge. *See Osterberg*, 12 S.W.3d at 55 (stating that sufficiency of

12

evidence is measured against jury charge when parties did not object to measure of damages set forth in charge). Moreover, there is no evidence of the amount of expenses that Peterson incurred on behalf of Angleton Sand. *See* WEBSTER'S NEW ENCYCLOPEDIC DICTIONARY 806 (defining profit as "the gain after all expenses are subtracted from the total amount received.") Thus, there is no evidence—much less a range of evidence—establishing "[t]he amount of profits from the operation of Angleton Sand that rightfully belong to [Peterson] that were retained by [Kroschel]."

Applying the proper standard of review, we conclude that there is no more than a scintilla of evidence supporting the jury's finding that Peterson suffered $83,762.50 in past damages and hold that the evidence was legally insufficient to support the finding. *See City of Keller*, 168 S.W.3d at 813.

We sustain Kroschel's second issue.

### Declaratory Judgment

In his first issue, Peterson contends that the trial court erred by not granting his request for declaratory relief.

We review the grant or denial of declaratory judgment under the same standard that applies to other judgments. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (West 2015). Declaratory judgment is appropriate when a justiciable controversy exists between the parties, and the entire controversy may be

determined by judicial declaration. *See Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 873 (Tex. App.—Dallas 2005, no pet.) (citing *Scurlock Permian Corp. v. Brazos Cnty.*, 869 S.W.2d 478, 486 (Tex. App.—Houston [1st Dist.] 1993, writ denied)). A court may refuse to render or enter a declaratory judgment, however, if the judgment would not terminate the uncertainty or controversy giving rise to the proceeding. TEX. CIV. PRAC. & REM. CODE ANN. § 37.008 (West 2015). Additionally, declaratory judgment is not an appropriate means of resolving purely factual disputes. *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 699 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("If a factual dispute is the only issue to be resolved, a declaratory judgment is not the proper remedy.").

Peterson's pleadings asked the trial court to make a series of declarations regarding the formation and organization of Angleton Sand pursuant to the Uniform Declaratory Judgment Act (UDJA). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.003 (West 2015). After the jury verdict and before Kroschel filed his motion for JNOV, Peterson filed a motion asking the court to declare that (1) "Angleton Sand was a partnership for a limited purpose," (2) "[t]he partnership terminated with the withdrawal of Roger Kroschel, III in March 2010," (3) "[t]he partnership has no equity in the tractor-scraper," and (4) "[t]he tractor scraper should be awarded to Robert Peterson." The trial court declared "that Angleton Sand was a general partnership" in its final judgment.

Peterson argues that there is conflicting testimony regarding the type of entity he and Kroschel formed and that a declaration on this issue is necessary to "define the future relationship of the parties." Peterson's argument, however, ignores the fact that the trial court expressly declared the nature of Angleton Sand's legal existence: "IT IS HEREBY ORDERED, ADJUDGED AND DECLARED, that Angleton Sand was a general partnership." Neither party is challenging the trial court's declaration on appeal.

Peterson also asked the trial court to declare that "[t]he partnership terminated with the withdrawal of Roger Kroschel, III in March 2010" and that the partnership had no equity interest in the tractor. When there is no written partnership agreement, a person may withdraw from a partnership by giving notice of his "express will to withdraw" to the partnership. *See* TEX. BUS. ORGS. CODE ANN. § 152.501(a), (b)(1) (West 2012); *see also Bendalin v. Youngblood & Assocs.*, 381 S.W.3d 719, 736–37 (Tex. App.—Texarkana 2012, pet. denied) (holding partner's unequivocal oral notice of intent to withdraw from partnership sufficient to trigger event of withdrawal under statute). Here, Peterson testified that Kroschel "got off the tractor and said he needed to go talk to a lawyer [in 2010] and [that Peterson had not] seen him since on another project." This evidence, however, does not conclusively establish that Kroschel withdrew from the partnership (i.e., that Kroschel gave unequivocal notice of his intent to withdraw to

15

Peterson). *See Bendalin*, 381 S.W.3d 736–37. Indeed, Kroschel testified that he never withdrew from Angleton Sand and that he was pushed out of the partnership by Peterson at some unspecified time. Thus, whether Kroschel withdrew from the partnership in 2010 is a disputed fact issue. Similarly, whether the tractor is partnership property is also a disputed fact issue. The evidence establishes that although the contract with John Deere identified Peterson and Kroschel, individually, as the buyers, several payments on the tractor were made from Angleton Sand's bank account. *See* Tex. Bus. Orgs. Code Ann. § 152.102(b) (West 2012) ("Property is presumed to be partnership property if acquired with partnership property" regardless of whether it was acquired in name of partnership). Therefore, whether "[t]he partnership terminated with the withdrawal of Roger Kroschel, III in March 2010" and whether the partnership has an equity interest in the tractor are both purely factual disputes that the trial court could not have resolved with a declaratory judgment. *See Indian Beach Prop. Owners' Ass'n*, 222 S.W.3d at 699.

Peterson also asked the court to declare that the "[t]he tractor scraper should be awarded to Robert Peterson." A declaration regarding Kroschel's and Peterson's respective interests and obligations with regard to the tractor may eliminate some of the uncertainty between these two parties, but it would not have resolved the entire controversy. This is particularly true given the fact that Kroschel and

Peterson signed an installment contract with John Deere in July 2009 in which they both agreed to be jointly and severally liable for the purchase price of the tractor. Under the terms of that agreement, John Deere has several remedies against Kroschel and Peterson, individually, in the event of default, including repossession of the equipment and the recovery of the balance on the account as liquidated damages. John Deere was not a party to this suit. Because the requested declaration would not have resolved the entire controversy, we cannot say that the trial court erred in refusing to make such a declaration. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.008 (West 2015).

We overrule Peterson's first issue.

## Future Damages and Attorney's Fees

In his second issue, Peterson contends that the trial court erred by granting Kroschel's motion for JNOV and not awarding Peterson future damages or attorney's fees. We review a trial court's decision to grant or deny a motion for JNOV by the same standard as a legal-sufficiency challenge. *See City of Keller*, 168 S.W.3d at 823. Under this standard, we review the entire record, credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id.* at 822. We may not sustain a legal sufficiency, or "no evidence," point unless the record demonstrates: (1) a complete absence of a vital fact; (2) the court is barred by rules of law or of evidence from

giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810; *Merrell Dow Pharms.*, 953 S.W.2d at 711.

## A.    Future Damages

Peterson argues that the trial court erred by failing to award him $75,000 in future damages as set forth in the jury's verdict, because there is evidence that he "will have future damages as he is made to pay for a tractor-scraper from his other income sources."

Peterson testified that he and Kroschel owed approximately $150,000 to John Deere at the time of trial for the tractor and that John Deere was threatening to foreclose. Peterson testified that Angleton Sand went out of business in 2010, and that he was the only party attempting to make payments on the tractor, and he asked the jury to award him Kroschel's half of the outstanding $150,000 debt as future damages.

Peterson did not object to the measure of damages set forth in the jury charge or request any additional instructions with respect to his request for future damages based on the outstanding obligation owed on the tractor. Accordingly, we must evaluate the award of damages based on the jury charge that was given. *See Faucette*, 322 S.W.3d at 912; *see also Osterberg*, 12 S.W.3d at 55. As previously

discussed, the jury was instructed that it could only consider "[t]he amount of profits from the operation of Angleton Sand that rightfully belong to [Peterson] that were retained by [Kroschel]" when awarding damages in this case, and that it could "offset against this amount the amount of profits from the operation of Angleton Sand that rightfully belong to [Kroschel] that were retained by [Peterson], if any."

The evidence establishes that Peterson and Kroschel are contractually obligated to pay John Deere the balance of the loan on the tractor in the future and that Peterson will have $150,000 in future out-of-pocket expenses if he satisfies this financial obligation without any contribution from Kroschel. However, this is not evidence that Peterson will have $75,000 in "actual damages that in reasonable probability will be sustained in the future," based on "[t]he amount of profits *from the operation of Angleton Sand* that rightfully belong to [Peterson] that were retained by [Kroschel]." *See City of Keller*, 168 S.W.3d at 823. Peterson testified that Angleton Sand was no longer in business at the time of trial or generating any revenue and, thus, any future payments on the tractor could not be paid for by any "profits from the operation of Angleton Sand." Accordingly, we hold that the evidence is legally insufficient to support the jury's award of $75,000 in future damages based on the damages charge that was submitted. *See*

*id.* Peterson may have a future cause of action for contribution against Kroschel but that is not the question the jury was asked.

We overrule this portion of Peterson's second issue.

## B.    Attorney's Fees

Peterson argues that he was entitled to attorney's fees in this case because he filed a meritorious request under the UDJA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2015) (stating "the court may award costs and reasonable and necessary attorney's fees as are equitable and just."). It is well settled that an award of attorney's fees under UDJA rests within the sound discretion of the trial court. *See Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998). Such discretion "is subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Id.* at 21. In exercising its discretion, the trial court may award attorney's fees to the prevailing party, the non-prevailing party, or it may decline to award attorney's fees to either party. *See Feldman v. KPMG LLP*, 438 S.W.3d 678, 685 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see generally Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Util. Dist.*, 198 S.W.3d 300, 319 (Tex. App.—Texarkana 2006, pet. denied) ("A prevailing party in a declaratory judgment action is not entitled to attorney's fees simply as a matter

of law; entitlement depends on what is equitable and just, and the trial court's power is, in that respect, discretionary.").

On appeal, Peterson argues that the trial court abused its discretion when it disregarded the jury's award of attorney's fees because there was sufficient evidence to support the award. In exercising its discretion, however, a trial court may decline to award reasonable and necessary attorney's fees that are supported by sufficient evidence if that court concludes that it is not equitable or just to award such fees. *Bocquet*, 972 S.W.2d at 21 (stating that "the court may conclude that it is not equitable or just to award even reasonable and necessary fees"). Peterson does not challenge the trial court's implicit conclusion that an award of attorney's fees was not equitable or just in this case. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006) ("Except for fundamental error, appellate courts are not authorized to consider issues not properly raised by the parties."); *see also Bankhead v. Maddox*, 135 S.W.3d 162, 163–64 (Tex. App.—Tyler 2004, no pet.) (stating that "appellate court has no discretion to fabricate an issue not raised in the appellant's brief").

Accordingly, we overrule this portion of Peterson's second issue.

## Conclusion

We affirm the trial court's denial of future damages and attorney's fees, and refusal to grant additional declaratory relief, and we reverse the award of past damages and render judgment that Peterson take nothing on his claims.


                                     Russell Lloyd
                                     Justice


Panel consists of Chief Justice Radack and Justices Brown and Lloyd.