# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00290-CV

**Ford Motor Company, Appellant**

**v.**

**Motor Vehicle Board of the Texas Department of Transportation and
Metro Ford Truck Sales, Inc., Appellees**

## DIRECT APPEAL FROM THE MOTOR VEHICLE BOARD
## OF THE TEXAS DEPARTMENT OF TRANSPORTATION

## M E M O R A N D U M   O P I N I O N

Ford Motor Company appeals from the order by the Motor Vehicle Board of the Texas Department of Transportation fining Ford $10,000 for improperly resisting the transfer of the Ford truck sales franchise assigned to Metro Ford Truck Sales, Inc. We conclude that the Board's order must be reversed because of the Board's failure to give proper effect to a previous decision in a related case by this Court. Accordingly, we reverse the Board's order and remand this cause for further proceedings.

This cause is part of a long-running dispute between Ford and Metro, a Ford franchisee.[1] In 1995, Ford attempted to terminate Metro's franchise. Metro protested, prompting

---

[1] A more detailed history of the dispute between these companies is set out in a previous opinion by this Court in a related cause. *See Ford Motor Co. v. Motor Vehicle Bd.*, 21 S.W.3d 744, 748-54 (Tex. App.—Austin 2000, pet. denied). Other aspects of the overall dispute are also set out in separate opinions issued along with this one. *See Sterling Truck Corp. v. Motor Vehicle Bd.*, No. 03-05-00288-CV (Tex. App.—Austin May 1, 2008) (*Metro V*); *Freightliner Corp. v. Motor Vehicle Bd.*, 03-05-00289-CV (Tex. App.—Austin May 1, 2008) (*Metro I*).

a proceeding before the Board to determine whether Ford had good cause to terminate the franchise (*Metro I*). *See* Tex. Occ. Code Ann. § 2301.453 (West 2004). That protest triggered entry of a statutory stay that prevented the parties from committing any act or omission that would affect a legal right, duty, or privilege of any party before the Board. *Id.* § 2301.803 (West 2004). In 1998, the Board found that Ford had good cause to terminate the franchise, but imposed conditions on the termination—including that Ford allow Metro to sell the franchise. The district court affirmed the good cause finding, reversed the imposition of conditions on the termination as unlawful, and remanded for further proceedings. This Court affirmed the district court's judgment. *Ford Motor Co. v. Motor Vehicle Bd.*, 21 S.W.3d 744, 748-54 (Tex. App.—Austin 2000, pet. denied). The supreme court denied review on April 5, 2001.

Also in 2001, Metro proposed selling its franchise to the Cox Group. Ford opposed the sale—in part because of the judicially affirmed finding that Ford had good cause to terminate the franchise and in part because of alleged deficiencies in both the transfer application and the Cox Group's qualifications. A motor vehicle manufacturer may not unreasonably prohibit the sale of a franchise. Tex. Occ. Code Ann. § 2301.359(e) (West 2004); *see also id.* § 2301.458 (West 2004). The manufacturer must state in writing its reasons for opposing the transfer. *Id.* § 2301.359(d). A dealer whose transfer is rejected may file a protest with the Board. *Id.* § 2301.360 (West 2004). The manufacturer must then establish that the proposed transferee is not qualified. *Id.* If the Board finds that the proposed transferee is qualified, the transfer is effected by law.

2

*Id.* § 2301.360(c). After Ford rejected the proposed transfer, Metro filed a protest with the Board on July 20, 2001. That protest is this cause (*Metro IV*).**²**

Ford asked the Board to resolve *Metro I* before considering this cause. When the Board refused, Ford filed a petition for writ of mandamus with this Court, seeking to stay this proceeding and thereby compel the Board to give precedence to *Metro I*. This Court denied the petition. *See In re Ford Motor Co.*, No. 02-03-00314-CV (Tex. App.—Austin May 31, 2002, orig. proceeding). After learning that Metro no longer wanted to sell the franchise to the Cox Group, but instead wanted to sell it to Stanley Graff, Ford sought dismissal of this cause as moot. The Board declined to dismiss. Ford's opposition to the sale to Graff prompted Metro to file a protest with the Board. That cause is *Metro V* and is the subject of a separate proceeding that is decided by this Court contemporaneously with this opinion. *Sterling Truck Corp. v. Motor Vehicle Bd.*, No. 03-05-00288-CV (Tex. App.—Austin May 1, 2008).

On February 3, 2005, the Board decided all three causes. In its reconsideration of *Metro I*, the Board withdrew its good cause determination and concluded instead that Ford did not have good cause to terminate Metro's franchise. In this cause, *Metro IV*, the Board adopted the proposal for decision of the administrative law judge ("ALJ"). The Board concluded that Ford's requirements for the Cox Group were unreasonable and contrary to applicable statutes. The Board assessed a $10,000 civil penalty against Ford for violating the statutes by unreasonably opposing the sale. The Board assessed the fine despite the Cox Group's withdrawal, reasoning that Ford's

---

**²** The record contains references to other disputes (e.g., *Metro II* and *Metro III*) not before this Court that the parties presented to the Board.

statutory violations were complete when Ford wrongly opposed the sale and did not become moot when the Cox Group decided not to buy the property. Because the Cox Group was "no longer a viable purchaser," the Board determined that the statutory transfer to the Cox Group was not required. In *Metro V*, the Board found that proposed transferee Graff was qualified, fined Ford for resisting the transfer of the franchise to Graff, and ordered the franchise transferred pursuant to statute. Ford has appealed all three orders.

Ford raises several issues in this direct appeal challenging the Board's decision in *Metro IV*. Ford argues that the order in this cause violated the statutory stay imposed by the filing of *Metro I*. Ford contends that the order is void because Metro never properly invoked the sale approval process that led to this protest and order. Ford also asserts that this cause was moot when filed, arguing that the affirmance of the good cause determination rendered a forced sale to the Cox Group impossible. Ford also contends that the Cox Group's withdrawal of its offer to purchase the property mooted the controversy and stripped Metro of its standing to pursue this cause to force a sale to the Cox Group. Ford argues that, in light of the judicially affirmed finding that Ford had good cause to terminate Metro's franchise and the Cox Group's withdrawal of its offer, Ford could not approve a transfer of Metro's dealership, Metro did not have the ability to propose a transfer, and the Board did not have the authority to penalize Ford for failing to allow Metro to transfer the franchise.

We review the Board's order under the substantial evidence rule. Tex. Occ. Code Ann. § 2301.751 (West 2004). Under that standard of review,

4

a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion but:

(1) may affirm the agency decision in whole or in part; and

(2) shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

    (A) in violation of a constitutional or statutory provision;

    (B) in excess of the agency's statutory authority;

    (C) made through unlawful procedure;

    (D) affected by other error of law;

    (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

    (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code Ann. § 2001.174 (West 2000).

Ford argues that the Board's order in *Metro IV* violated the statutory stay implemented by the filing of *Metro I*. The statute creating the stay provides as follows:

(a) On the initiation of a board proceeding, whether by complaint, protest, or otherwise, a person who receives notice from the board of a statutory stay imposed by this chapter may not allow or commit any act or omission that would:

(1) violate this chapter or any rule, order, or decision of the board;

(2) affect a legal right, duty, or privilege of any party before the board; or

(3) tend to render ineffectual a board order in a pending proceeding.

5

(b) A statutory stay imposed by this chapter remains in effect until vacated or until the proceeding is concluded by a final order or decision.

(c) A person affected by a statutory stay imposed by this chapter may initiate a proceeding before the board to modify, vacate, or clarify the extent and application of the statutory stay.

Tex. Occ. Code Ann. § 2301.803. This statute bars various types of actions by "a person who receives notice from the board of a statutory stay." *Id.* It does not prevent the Board from taking any action during the pendency of the stay. The Board is expressly empowered to vacate its own stay. *Id.* In addition, the stay lasts only until final order or decision, and the final order after remand in *Metro I* occurred essentially simultaneously with the final order in this cause. *Id.* We conclude that the Board's order in this cause did not violate its stay in *Metro I*.

We next examine whether Metro gave sufficient notice and information to Ford about the proposed sale to allow Metro to invoke the Board's jurisdiction to review a protest of Ford's rejection. The process for approval or disapproval of the transfer of a franchise involves a series of notices and responses between manufacturer and franchisee. *See* Tex. Occ. Code Ann. § 2301.359.[3]

---

[3] The occupations code provides as follows:

(a) A dealer must notify the manufacturer or distributor of a vehicle the dealer is franchised to sell of the dealer's decision to assign, sell, or otherwise transfer a franchise or a controlling interest in the dealership to another person. The notice is the application by the dealer for approval by the manufacturer or distributor of the transfer.

(b) Notice under Subsection (a) must:

(1) be in writing and include the prospective transferee's name, address, financial qualifications, and business experience; and

(2) be sent by certified mail, return receipt requested.

The code provides that "[a] dealer whose application is rejected under Section 2301.359 may file a protest with the board." *Id.* § 2301.360(a).

Ford contends that the Board had no power to hear this cause because Metro's notice to Ford of the sale was insufficient to start the manufacturer's sale review process that precedes the Board's review of a protest. Ford complains that someone other than the seller sent the initial letter

---

(c) The notice must be accompanied by:

    (1) a copy of pertinent agreements regarding the proposed assignment, sale, or transfer;

    (2) completed application forms and related information generally used by the manufacturer or distributor in reviewing prospective dealers, if the forms are on file with the board; and

    (3) the prospective transferee's written agreement to comply with the franchise to the extent that the franchise is not in conflict with this chapter.

(d) Not later than the 60th day after the date of receipt of a notice and application under this section, a manufacturer or distributor shall determine whether a dealer's prospective transferee is qualified and shall send a letter by certified mail, return receipt requested, informing the dealer of the approval or the unacceptability of the prospective transferee. If the prospective transferee is not acceptable, the manufacturer or distributor shall include a statement setting forth the material reasons for the rejection.

(e) A manufacturer or distributor may not unreasonably withhold approval of an application filed under Subsection (a). It is unreasonable for a manufacturer or distributor to reject a prospective transferee who is of good moral character and who meets the written, reasonable, and uniformly applied standards or qualifications, if any, of the manufacturer or distributor relating to the prospective transferee's business experience and financial qualifications.

(f) An application filed under this section is approved unless rejected by the manufacturer or distributor in the manner provided by this section.

Tex. Occ. Code Ann. § 2301.359 (West 2004).

7

informing Ford about the proposed sale, that the initial letter was not certified, that it did not include required information (such as the proposed buyer's name and address), and that it did not include a completed application from the proposed transferee or a copy of the final agreement showing that Metro had decided to transfer the franchise. *See id.* § 2301.359(b), (c). Ford contends that Metro's subsequent letter to Ford did not fill in all the gaps left by the Cox Group's earlier letter. Metro's letter also was not sent by certified mail and included a non-binding letter of intent to sell, which Ford argues did not notify Ford of a final decision to sell and, therefore, was not the pertinent and required sales agreement. According to Ford, these deficiencies prevented Metro from invoking the Board's jurisdiction and rendered the Board's subsequent order void.

We conclude that the alleged deficiencies in notice and material supplied by Metro to Ford did not deprive the Board of jurisdiction to hear Metro's protest. The Board's review process is triggered by a protest filed by a dealer whose proposed sale has been rejected by the manufacturer under section 2301.359. *See* Tex. Occ. Code Ann. § 2301.360(a). Regardless of any inadequacies in materials sent to Ford about the sale, Ford's letter rejecting the proposed sale is a "statement setting forth the material reasons for the rejection" as described by the occupations code (although it, too, allegedly was not sent by certified mail as required). *See id.* § 2301.359(d). Metro's protest of that rejection invoked the Board's jurisdiction. *See id.* § 2301.360(a). Inadequacies in a notice of a proposed sale and supporting materials sent to a manufacturer may make rejection of the sale more reasonable and, thus, may affect the assessment of the merits of a protest of the rejection, but we are not persuaded that such inadequacies deprive the Board of the

8

power to consider the protest. The Board's order is not void for want of jurisdiction based on these reported notice deficiencies.

Ford also contends that the withdrawal of the Cox Group's offer rendered this entire proceeding moot. Ford argues that the Board lacked the ability to review Ford's rejection of the sale because the Board could not mandate the transfer of the franchise. This argument is not supported by the enabling statutes. The Board has the power to assess a civil penalty for statutory violations. *Id.* § 2301.801. The Board concluded that Ford violated the statute by unreasonably rejecting the proposed sale of the franchise to a qualified buyer. *See id.* § 2301.359(e). Whether the Cox Group was a qualified buyer when Ford rejected the proposed sale was fixed at the time of the rejection. Any impropriety in that rejection did not disappear with the withdrawal of the offer. This cause is not a tort or breach of contract case where harm could be avoided or benefit of the bargain might be achieved and the damages completely mitigated. This is an assessment of a civil penalty for violations of statutory duties. The Board retained jurisdiction over the issue of whether Ford violated the law at the time it rejected Metro's proposed sale of the franchise to the Cox Group.

Ford contends that this Court's rejection of the forced sale in *Metro I* makes this proceeding—reviewing the propriety of Ford's rejection of a proposed sale—an improper collateral attack on the decision in *Metro I*. *See Ford*, 21 S.W.3d at 766. "A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against." *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). Although Metro may have proposed the Cox Group sale to avert the ultimate practical *effect* of this

9

Court's previous decision in *Metro I*, this proceeding does not attack the *binding force* of that judgment. This Court's opinion in *Metro I* did not terminate Metro's franchise. Rather, it merely affirmed the Board's decision that Ford had good cause to terminate the franchise.[4] This Court's determination that the Board lacked the authority to force a sale is limited to the context of a proceeding to determine whether a manufacturer has good cause to terminate a franchise. *See Ford*, 21 S.W.3d at 764-66. Unlike the statutes defining the good-cause determination, the statutory scheme for reviewing protests of rejected sales expressly empowers the Board to require a manufacturer to permit a sale to a qualified buyer. *Compare* Tex. Occ. Code Ann. § 2301.453 (good cause), *with id.* § 2301.360(c) (rejected sale). In *Metro I*, this Court did not address a parallel, statutorily authorized protest of a manufacturer's rejection of a proposed sale. The protest of the rejection of the proposed sale in *Metro IV* is not a collateral attack on the holdings in *Metro I*.

Ford argues that this proceeding is barred by the doctrines of collateral estoppel and res judicata. Collateral estoppel bars the relitigation of issues resolved in a previous suit if: (1) the facts sought to be litigated were fully and fairly litigated in the previous suit, (2) those facts were essential to the judgment in that suit, and (3) the parties were adversaries in that suit.

---

[4] In the conclusion of the 2000 opinion in *Metro I*, this Court wrote, "We affirm the termination of the Metro franchise for good cause . . . ." *Ford*, 21 S.W.3d at 767. However, as set out earlier in that opinion, this Court affirmed the finding of *good cause* to terminate the franchise, not an actual termination. *See id.* at 766 ("there is substantial evidence to support the Board's finding *of good cause* to terminate Metro" (emphasis added)). The Board is authorized in transfer proceedings to review whether a manufacturer has good cause to terminate a franchise, not to order the termination. *See* Tex. Occ. Code Ann. §§ 2301.453, .455 (West 2004). The 2000 judgment of this Court merely affirmed decisions by the trial court and the Board which, as discussed in our contemporaneous opinion in *Metro I*, affirmed the finding of good cause. *Freightliner*, 03-05-00289-CV, slip op. at 19-20.

*HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 890 n.2 (Tex. 1998). The doctrine of res judicata "prevents a plaintiff from abandoning claims and subsequently asserting them when the claims could have been litigated in the prior suit. For res judicata to apply, there must be: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action." *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007) (citations omitted). The issues of whether Metro's franchise should be terminated and whether the Board could force a sale in a good-cause proceeding were litigated in *Metro I*, but those issues are not present in this proceeding. The issues central to this proceeding—whether the Cox Group was qualified to be a franchisee and whether Ford reasonably rejected the proposed sale—were not litigated in *Metro I*. We are not persuaded that fact questions and claims relating to the proposed Cox Group sale should have been brought in a proceeding focused on whether Metro had given Ford good cause to terminate its franchise. The previous judgment in *Metro I* that Ford had good cause to terminate Metro's franchise did not bar Metro from protesting in this cause Ford's rejection of the proposed sale to the Cox Group under the doctrines of res judicata or collateral estoppel.

Although our prior judgment in *Metro I* did not bar this cause, the Board's misapplication of our holding in *Metro I* fundamentally undermines its order in this cause. Ford argued to the Board, as it does in this appeal, that the affirmance of the good cause determination meant that Metro had no franchise to sell or that permitting a sale was inconsistent with the occupations code. The ALJ found these arguments "unpersuasive" because they oversimplified "a very complex set of decisions" and completely ignored the context of the other findings

11

and conclusions regarding Ford's culpability for events leading to the good cause determination. Tex. Motor Veh. Bd., *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, Docket No. 01-0040 LIC, at 29-30 (July 16, 2004) (PFD). The ALJ correctly stated that Metro held the franchise even after the remand and that the good cause finding did "not force Metro to immediately and unconditionally give up its franchise." *Id.* at 30.[5] However, the Board went further in its reconsideration of *Metro I*, believing that the good cause determination itself was within the scope of the remand. As we discuss at greater length in our opinion on the concurrent appeal in *Metro I*, however, the good cause determination was affirmed and not remanded. *See Freightliner Corp. v. Motor Vehicle Bd.*, 03-05-00289-CV, slip op. at 19-20 (Tex. App.—Austin May 1, 2008). Thus, the Board assessed a penalty against Ford in this case while under a key misapprehension regarding the context of Ford's resistance to the proposed transfer. This error of law in the related case concerning the security of Metro's hold on its franchise plainly affected the Board's decision in this case.

We cannot gauge, however, the extent to which the misapprehension regarding the good cause determination affected the Board's decision in this case. Nor can we discern the extent to which the Board's mistaken belief that the good cause determination was remanded affected the determination that Ford improperly rejected the sale and that a fine was appropriate. It is possible that the Board's order may have been based on the merits of the Cox Group's application irrespective

---

[5] The legislature did not make termination automatic upon the finding of good cause to terminate. *See* Tex. Occ. Code Ann. § 2301.453(g) ("After a hearing, the board shall determine whether the party seeking the termination or discontinuance has established by a preponderance of the evidence that there is good cause for the proposed termination or discontinuance."). This contrasts sharply with the statute governing reviews of protests of rejected sales, which provides for automatic transfer of the franchise when the Board finds that the rejected prospective transferee is qualified. *See* Tex. Occ. Code Ann. § 2301.360(c) (West 2004).

12

of the status of Metro's franchise. Indeed, the Board found violations and imposed a fine even though the Cox Group actually withdrew its offer to purchase and one investor in the prospective purchasing group was later revealed to be morally unfit. On the other hand, it is more likely that the Board's assessment of Ford's resistance to the sale would have been different had the Board understood that the good cause determination in *Metro I* was not remanded and was not subject to being revisited by the Board. Supporting this view is the ALJ's remark—part of the proposal for decision adopted by the Board—on the importance of the context of the complex set of decisions made concerning the dispute between these parties. Assessing Ford's opposition to the sale in the proper context, the Director of the Motor Vehicle Division of the Texas Department of Transportation[6] may well conclude that no violation occurred or that any violations are less serious and warrant a lesser fine. The Board's error of law and the uncertainty it engenders regarding the violations found and the fine imposed require that we reverse the Board's order in this cause and remand for reconsideration and further proceedings.

Having determined to remand this cause based on the error of law regarding the determination that Ford had good cause to terminate Metro's franchise, we will not review Ford's remaining issues on appeal regarding the support for the findings of violations and the assessment of a fine. Although Ford requests that we reject the Board's holdings supporting the assessment of the fine and render judgment in Ford's favor, we are not authorized in this type of case to render a judgment that we believe the agency should have rendered if, by doing so, we

---

[6] The legislature has given the Board's former responsibilities to the Director of the Motor Vehicle Division of the Texas Department of Transportation. *See* Tex. Occ. Code Ann. § 2301.005(a) (West Supp. 2007).

would usurp the agency's authority. *See* Tex. Gov't Code Ann. § 2001.174; *Ford Motor Co. v. Butnaru*, 157 S.W.3d 142, 149 (Tex. App.—Austin 2005, no pet.); *Pantera Energy Co. v. Railroad Comm'n*, 150 S.W.3d 466, 474 n.9 (Tex. App.—Austin 2004, no pet.); *Public Util. Comm'n v. GTE-SW*, 833 S.W.2d 153, 175 (Tex. App.—Austin 1992), *aff'd in part, rev'd in part on other grounds*, 901 S.W.2d 401 (Tex. 1995); *Consumers Water, Inc. v. Public Util. Comm'n*, 774 S.W.2d 719, 722 (Tex. App.—Austin 1989, no writ); *see also Marrs v. Railroad Comm'n*, 177 S.W.2d 941, 950 (Tex. 1944). On the record presented, we believe that rendering judgment in favor of Ford would be an unwarranted intrusion on the Board's authority. Because resolution of these remaining issues would not alter our disposition of this cause, consideration of them is not necessary to the final disposition of this appeal. *See* Tex. R. App. P. 47.1. For the same reason, we do not address Metro's assertion that Ford waived the right to complain about one of the Board's findings.

We reverse the Board's order assessing a fine against Ford in this cause and remand the cause to the Director of the Motor Vehicle Division of the Texas Department of Transportation for reconsideration in light of a correct application of this Court's holdings in *Metro I* and further proceedings consistent with this opinion.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Reversed and Remanded

Filed:  May 1, 2008